STOKEN v J E T ELECTRONICS AND TECHNOLOGY, INC.

Docket No. 100841. Submitted June 14, 1988, at Grand Rapids. Decided September 22, 1988.

Mary Stoken was hired by J.E.T. Electronics and Technology, Inc. (JET) in February, 1978, and given a copy of the company handbook outlining the policies and procedures of the company. Stoken took a medical leave from JET from December, 1982, through March, 1983, in accordance with the policies set forth in the handbook and received temporary disability benefits. From June, 1983, through sometime in August, 1983, Stoken was hospitalized, and she received temporary disability benefits after complying with JET's medical leave policies. On October 14, 1983, Stoken attempted to commit suicide by shooting herself. She was hospitalized for five to six weeks. She did not request a leave of absence from JET or follow the prescribed procedures and policies as stated in the company handbook. On November 9, 1983, JET sent a certified letter to Stoken stating that her employment would be terminated if JET did not receive medical documentation by November 18, 1983, showing her need for a medical leave of absence. The return receipt was signed on November 21, 1983. On November 18, 1983, Stoken's mother made a telephone call to JET informing JET that Stoken was in the hospital. Stoken's mother was informed that medical documentation was required for a leave of absence. That same day, JET terminated Stoken's employment because she was on unauthorized leave. Stoken learned of the termination on December 12, 1983. In January, 1984, she applied for and received social security disability benefits. The Social Security Administration found that Stoken was totally disabled from October 14, 1983. Stoken filed suit against JET in Kent Circuit Court alleging a breach of an implied contract of employment. Plaintiff alleged that JET's company manual created a "just cause" contract and that the relationship between plaintiff and JET therefore was not terminable at will. At the close of proofs,

REFERENCES

Am Jur 2d, Appeal and Error § 849; Master and Servant §§ 43 *et seq.*; Trial §§ 463, 491-495, 524 *et seq.*

Modern status of rule that employer may discharge at-will employee for any reason. 12 ALR4th 544.

defendant moved for a directed verdict. The motion was denied, Roman J. Snow, J. Following trial, the jury returned a verdict in favor of plaintiff, awarding her damages of $14,152.18. Judgment was entered, George R. Cook, J. JET moved for judgment notwithstanding the verdict, a new trial, or remittitur. That motion was also denied. JET appealed.

The Court of Appeals *held:*

1. Plaintiff is correct in her claim that JET had established a company policy to discharge for just cause only, pursuant to certain procedures, that JET had made that policy known to plaintiff, and therefore that JET had committed itself to discharge plaintiff only for just cause in compliance with the procedures.

2. Plaintiff's interpretation and understanding of the handbook, as stated in her testimony and viewed in the light most favorable to plaintiff, evidences both a subjective and an objective expectation of employment terminable for cause.

3. The facts show that plaintiff's employment was not terminated at the will of JET. Plaintiff was discharged pursuant to the established policies and procedures concerning leaves of absence as stated in the company handbook and with which plaintiff was familiar. JET did not breach the contract. Plaintiff was discharged for cause and is not entitled to damages. The jury's verdict, the judgment after verdict, and the denial of JET's motion for a directed verdict are vacated. The trial court is to enter an order vacating the verdict and granting JET's motion for a directed verdict for the reason that JET did not breach its contract with plaintiff and that, therefore, there was no question of fact to submit to the jury.

Reversed and vacated.

1. MOTIONS AND ORDERS — DIRECTED VERDICT.

A defendant is entitled to a directed verdict where a plaintiff has failed to establish a prima facie case.

2. TRIAL — JURY — QUESTIONS OF FACT.

A trial judge may not take from the jury a fact question upon which reasonable persons could reach different conclusions.

3. APPEAL — DIRECTED VERDICT — QUESTIONS OF FACT.

The Court of Appeals in deciding whether a trial court erred in granting or denying a directed verdict reviews all the evidence presented to determine whether a question of fact existed; in doing so, the Court views the evidence in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor.

4. MASTER AND SERVANT — TERMINATION OF EMPLOYMENT — COM-
     PANY POLICY AND PROCEDURE — CONTRACTS.

   An employer's statements of company policy and procedure as to
   termination of employment can give rise to rights enforceable
   in contract.

5. MASTER AND SERVANT — TERMINATION OF EMPLOYMENT — JUST
     CAUSE — IMPLIED CONTRACTS.

   An employee seeking to imply a contract of employment termina-
   ble only for just cause must harbor a subjective, as well as an
   objective, expectation of such employment.

*Meana, Spruit & Bedevia, P.C.* (by *Richard M. Spruit*), for plaintiff.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Douglas W. Van Essen*), for defendant.

Before: WEAVER, P.J., and DOCTOROFF and M. F. SAPALA,* JJ.

PER CURIAM. Defendant appeals as of right from two orders entered by the trial court. First the trial court denied defendant's motion for a directed verdict at the close of all proofs. Then a jury verdict in favor of plaintiff and against defendant, awarding plaintiff damages of $14,152.18, was returned on May 1, 1987, following which defendant made a motion for judgment notwithstanding the verdict, a new trial, or remittitur, which also was denied. We hold that defendant's motion for a directed verdict should have been granted. Therefore, we vacate the jury's verdict, the judgment after verdict, and the trial court's denial of defendant's motion for judgment notwithstanding the verdict, a new trial, or remittitur.

Plaintiff was hired by defendant in February, 1978. She was given the company handbook on her

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

first day of work and was told that it contained the policies and procedures of the company. Plaintiff believed that once an employee completed the probationary period, an employee's termination was determined by the guidelines spelled out in the handbook. Plaintiff felt that, as long as she abided by the rules set forth in the handbook, she would have a job.

The handbook contains a section on leaves of absence. Pertinent parts of that section state:

General—An absence of five (5) or more consecutive workdays will require leave of absence approval, or will result in termination for being on an unauthorized leave.

\*     \*     \*

MEDICAL LEAVE—Employees who have completed their probationary period may be granted a medical leave of absence by submitting a doctor's statement acceptable to the Company, stating the dates the employee will be unable to work and the reason for the leave. At the end of six (6) months, an employee will be placed on "inactive status" if he/she is still unable to return to work.

Employees on medical leave may be required to obtain a written release from their doctor before returning to work or to be examined by the Company doctor if so requested.

Seniority will be retained for two (2) calendar years (however seniority will not be accumulated during the second year) during approved leaves of absence, and you will be reinstated to your former classification provided you are still physically able to perform assigned job duties and the leave is less than one (1) calendar year. For leaves of more than one (1) year but less than two (2) years, employees shall be returned to available work as soon as possible. However, there is no guarantee that employees will be reinstated to their former job.

Notify the Personnel Department when you are

ready to return to work, or if an extension of your
leave of absence is necessary.

The handbook states that after two years of
medical leave, an employee's employment is termi-
nated. The handbook also contains a section called
"Rules and Regulations" which delineates the dis-
ciplinary action that will be implemented for vio-
lations of company rules and regulations. The
possible disciplinary actions, depending upon the
rule violated, are verbal warning, written warning,
three working day disciplinary layoff, and termina-
tion. Following this section is a qualifying state-
ment that violations of the attendance policy are
subject to disciplinary action as separately stated
in the section on attendance policy and that the
"Rules and Regulations" section does not apply to
attendance violations.

Sometime during December, 1982, through
March, 1983, plaintiff took a medical leave. She
submitted a doctor's statement within the five-day
required period and received temporary disability
benefits. During a period beginning in late June
through sometime in August, 1983, plaintiff was
hospitalized. Again, a doctor's statement was prop-
erly submitted and plaintiff received temporary
disability benefits.

On October 14, 1983, plaintiff attempted suicide
by shooting herself. She was hospitalized at Blod-
gett Hospital for five to six weeks. She was then
transferred to Kent Oaks Psychiatric Hospital.
During this time, plaintiff was quite ill and diso-
riented. She did not request a leave of absence or
follow the prescribed procedures and policies as
stated in the manual.

Shortly after her attempted suicide, plaintiff's
son, August Swanson, went to defendant to pick
up plaintiff's check. He informed the person who

gave him the check that plaintiff was in intensive care. There was disputed testimony as to whether Swanson was told by a representative of defendant that plaintiff must submit medical documentation and fill out a leave application or that, absent these procedures, plaintiff's employment could be terminated. In any event, no medical documentation or request for leave was ever submitted to defendant.

On November 9, 1983, defendant sent a certified letter to plaintiff stating that her employment would be terminated if defendant did not receive medical documentation by November 18, 1983. The return receipt was signed on November 21, 1983. Defendant received a telephone call from plaintiff's mother on November 18, 1983. Plaintiff's mother was informed that medical documentation was required.

Defendant has never granted a medical leave absent a doctor's statement. On November 18, 1983, thirty-two days after her first missed day, plaintiff's employment was terminated because she was on unauthorized leave. Plaintiff was given additional time over the required five days because defendant knew that she was hospitalized.

Plaintiff learned of the termination of her employment on December 12, 1983. In January, 1984, plaintiff applied for and received social security disability benefits. The Social Security Administration found that plaintiff was totally disabled from October 14, 1983. Plaintiff submitted into evidence a doctor's notation dated sometime in May, 1985, which stated that an appointment was scheduled for August 4, 1985, and that it was hoped that a determination would be made at that time that plaintiff could return to work. However, no medical documentation was ever submitted to defendant or at trial stating that plaintiff could return

to work, and at the time of trial plaintiff was still receiving social security benefits for permanent disability. Plaintiff has not applied to other employers for work and is not registered for employment at the Michigan Employment Security Commission.

At the close of all proofs, defendant moved for a directed verdict. MCR 2.515. The trial court denied the motion. We find that, as a matter of law, this was error.

A defendant is entitled to a directed verdict where a plaintiff has failed to establish a prima facie case. When a fact question is presented upon which reasonable persons could reach different conclusions, the trial judge may not take the question from the jury. In deciding whether the trial court erred in granting or denying a directed verdict, we review all the evidence presented to determine whether a question of fact existed. In doing so, we view the evidence in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor. *Goldman v Phantom Freight, Inc,* 162 Mich App 472, 477; 413 NW2d 433 (1987), lv den 429 Mich 867 (1987).

The issue at trial was an alleged *"Toussaint"* breach of implied contract claim. Plaintiff was required to prove the existence of a *Toussaint* contract, a breach of that contract, and damages.

In *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579, 610; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980), it was held that an employer's statements of company policy and procedure as to termination can give rise to rights enforceable in contract:

[E]mployer statements of policy, such as the Blue Cross Supervisory Manual and Guidelines,

can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee, and, hence, although the statement of policy is signed by neither party, can be unilaterally amended by the employer without notice to the employee, and contains no reference to a specific employee, his job description or compensation, and although no reference was made to the policy statement in preemployment interviews and the employee does not learn of its existence until after his hiring. [*Toussaint,* pp 614-615.]

Thus, the Court held that contractual rights can arise where an employee's legitimate expectations are based on an employer's statements of policy. *Toussaint,* p 615.

It is for the trier of fact to determine whether the contract was not terminable at will because of defendant's written policy manual and whether plaintiff had a subjective expectation that she would not be discharged except for just cause. The question whether the termination of plaintiff's employment was in breach of contract, i.e., whether plaintiff was discharged for cause and in compliance with applicable procedures, is also for the jury as long as there is a genuine factual dispute. *Toussaint,* pp 620-621; *Struble v Lacks Industries, Inc,* 157 Mich App 169, 175; 403 NW2d 71 (1986).

Plaintiff alleged that defendant's manual created a "just cause" contract and that, therefore, the relationship between plaintiff and defendant was not terminable at will. Plaintiff claimed that defendant had established company policy to discharge for just cause only, pursuant to certain procedures, had made that policy known to plaintiff, and thereby had committed itself to discharge

plaintiff only for just cause in compliance with the procèdures. *Toussaint, supra,* p 614. We agree. We find that defendant offered no evidence that the manual was not what it purports to be—statements of company policy on the subjects there addressed, including discipline and termination. *Id.*

An employee seeking to imply a contract terminable for just cause must harbor a subjective, as well as an objective, expectation of employment terminable for cause to establish a *Toussaint* claim. *Longley v Blue Cross & Blue Shield of Michigan,* 136 Mich App 336, 340-341; 356 NW2d 20 (1984). We find that plaintiff's interpretation and understanding of the handbook, as stated in her testimony and viewed in the light most favorable to plaintiff, evidences both a subjective and an objective expectation of employment terminable for cause.

Therefore, we are in agreement that plaintiff and defendant had a contractual employment relationship that plaintiff would not be discharged absent just cause as stated by the policy and procedures in the manual. We hold that the manual and plaintiff's subjective and objective expectations rise to the level of a *Toussaint* contract. The evidence established conclusively that the manual described the obligations of both defendant and its employees and that it was defendant's intention to follow the described procedures. See *Damrow v Thumb Cooperative Terminal, Inc,* 126 Mich App 354, 363; 337 NW2d 338 (1983), lv den 418 Mich 899 (1983), where a similar manual was held to have established a *Toussaint* contract. However, we hold that there was no question of fact for a jury as to whether defendant breached the contract or whether plaintiff was entitled to damages.

The facts evidence that plaintiff's employment

was not terminated at the will of defendant. She was discharged pursuant to the established policies and procedures concerning leaves of absence as stated in the employee manual and with which plaintiff was familiar. Indeed, plaintiff had followed these established procedures in obtaining approval for two prior medical leaves. The provisions of the manual are clear and unambiguous. Defendant had no duty to institute a leave on plaintiff's behalf or even to wait as long as it did before discharging an employee who was on an unauthorized leave. Defendant did not breach the contract. Defendant followed the established policy and procedure concerning medical leaves when it terminated plaintiff's employment because she was on unauthorized leave.

Viewing the evidence in a light most favorable to plaintiff, we hold that plaintiff was discharged for cause and, therefore, is not entitled to damages. We hold that the jury's verdict, the judgment after verdict, and the denial of defendant's motion for directed verdict must be vacated. We instruct the trial court to enter an order vacating the verdict and granting defendant's motion for a directed verdict for the reason that defendant did not breach its contract with plaintiff and that, therefore, there was no question of fact to submit to the jury. In view of our decision with respect to the foregoing, we find it unnecessary to address the remaining issues.

Reversed and vacated. The trial court shall enter an order consistent with this opinion.