HUGHES v PARK PLACE MOTOR INN, INC

Docket No. 103933. Submitted July 13, 1989, at Grand Rapids. Decided September 18, 1989.

Harriet Hughes, a waitress for Park Place Motor Inn, Inc., for twenty years, was not rehired after the management at the restaurant decided to close the restaurant for two weeks, evaluate the performance of the employees, and institute certain changes. Employees were required to sign a notice of termination and pass a skills examination prior to being permitted to continue their employment with the restaurant. Hughes had passed a similar examination with no problems less than a year earlier. Hughes took the examination, was informed that she had failed it, and was told she would not be permitted to take it again and had no chance of future employment with the restaurant. Hughes filed suit against Park Place Motor Inn, Inc., in Grand Traverse Circuit Court. Following trial, the jury returned a verdict in favor of plaintiff and awarded her a total of $110,000; $50,000 for breach of contract, $35,000 for age discrimination, and $25,000 for negligent evaluation of employment performance. The court, William R. Brown, J., entered a judgment in favor of plaintiff for $110,000 and awarded her $30,800 in costs and attorney fees. Defendant filed a motion for a new trial, which was denied. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in finding that the jury's verdict was unambiguous and consistent with the written instruction contained in the verdict form.

2. The trial court did not err in finding that the award of $50,000 on plaintiff's claim for breach of contract was not excessive. There was sufficient evidence to support the findings that plaintiff was reasonable in rejecting defendant's offer of reemployment and that plaintiff's early retirement resulted from her termination of employment by defendant.

3. The trial court did not err in finding that the evidence

REFERENCES

Am Jur 2d, Civil Rights §§ 226 *et seq.*; Damages §§ 516-524.
Nature of alternative employment which employee must accept to minimize damages for wrongful discharge. 44 ALR3d 629.

adduced at trial supported a finding that plaintiff's age was a determining factor in defendant's decision to terminate plaintiff's employment.

4. The trial court did not err in finding that the evidence adduced at trial supported a finding that defendant was negligent in evaluating plaintiff's work performance.

Affirmed.

1. JURY — VERDICTS — INCONSISTENT VERDICTS.

The general rule is that where a verdict in a civil case is inconsistent and contradictory it will be set aside and a new trial granted; however, it is fundamental that every attempt must be made to harmonize a jury's verdicts because only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside.

2. DAMAGES — MITIGATION OF DAMAGES.

A plaintiff must make every reasonable effort to mitigate damages; the failure to mitigate damages is an affirmative defense, however, and the burden of proof of failure to mitigate is on the defendant.

3. LABOR RELATIONS — WRONGFUL DISCHARGE — DAMAGES — MITIGATION OF DAMAGES.

A wrongfully discharged employee is obligated to mitigate damages by accepting employment of a "like nature"; the criteria for determining "like nature" include the type of work, the hours of labor, the wages, tenure, and working conditions; whether or not an employee is reasonable in not seeking or accepting particular employment is a question for the trier of fact.

4. CIVIL RIGHTS — DISCRIMINATION — BURDEN OF PROOF.

Generally, a plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence.

5. CIVIL RIGHTS — AGE DISCRIMINATION.

A successful age-discrimination plaintiff need not prove that age was the sole reason for his discharge, but rather that age was a determining factor in that action.

*Timothy J. Bott Law Offices, P.C.* (by *Timothy J. Bott* and *Karen M. Spencer*), for plaintiff.

*Mark A. Hullman,* for defendant.

Before: MICHAEL J. KELLY, P.J., and WAHLS and HOLBROOK, JR., JJ.

WAHLS, J. Defendant, Park Place Motor Inn, Inc., appeals as of right from an April 22, 1987, order of the Grand Traverse Circuit Court awarding plaintiff, Harriet Hughes, $110,000, in accordance with the terms of a jury verdict, in addition to costs and attorney fees incurred. We affirm.

The record reveals that plaintiff, born on June 11, 1923, worked as a waitress at defendant's restaurant from 1955 to 1960 and again from 1964 to February, 1984. In early 1984, the management at defendant's restaurant decided to close the restaurant for two weeks, evaluate the performance of the employees, and institute certain changes. Employees were required to sign a notice of termination and pass a skills examination prior to being permitted to continue their employment with defendant. Plaintiff testified that she had passed with no difficulties a similar examination during the summer of 1983. After attending approximately three days of instructional classes, plaintiff took the examination and was informed that she had failed it, would not be permitted to take it again, and had no chance of future employment with defendant. In 1985, she filed suit against defendant, and after a four-day trial the jury returned a verdict awarding plaintiff a total of $110,000; $50,000 for breach of contract, $35,000 for age discrimination, and $25,000 for negligent evaluation of employment performance. The jury found in defendant's favor on plaintiff's claim of intentional infliction of emotional distress. On April 22, 1987, the trial court entered a judgment in favor of plaintiff for $110,000 and, pursuant to MCR 2.403(O) and the costs provision in the Civil Rights Act, MCL 37.2802; MSA 3.548(802), awarded plaintiff $30,800 in costs and attorney

fees. On September 25, 1987, the trial court denied defendant's motion for a new trial.

On appeal, defendant raises several issues, which we have considered and somewhat rephrased. First, defendant contends that the trial court erred in denying its motion for a new trial by finding that the jury's verdict was unambiguous and consistent with the written instruction contained in the verdict form. We disagree.

The special verdict form given to the jury in this case was drafted by trial counsel and the trial court. Just prior to discharging the jury, the trial court asked counsel whether there were "any clarifications sought of the verdict in any regard," and defense counsel responded, "[n]ot on behalf of the defendant, your Honor." The special verdict form, as completed by the jury, provided:

> On this jury verdict form you are to consider each count separately and to assess damages on any count for which you find for Plaintiff in total amount. If you find for Plaintiff on more than one count, you are to determine total damage on each count without regard to the fact tht [sic] your damage on one count may duplicate damages on another count.

> COUNT 1. Breach of Contract

> (Check only one as to this count)

> ___x___ 1. On the Complaint for breach of employment contract we find for Plaintiff and assess her damages at $50,000. (Note—damages must be limited to economic loss)
> or

> _____ 2. On the Complaint for breach of employment contract we find for Defendant.

> COUNT 2. Intentional Infliction of Emotional Distress.

> (Check only one as to this count)
> _____ 3. On the Complaint for intentional

infliction of emotional distress we find for Plaintiff and assess her damages at $_____. (Note—damages must be limited to non-economic loss)
or

___x___ 4. On the Complaint for intentional infliction of emotional distress we find for Defendant.

### COUNT 3—Age Discrimination

(Check only one as to this count)

___x___ 5. On the Complaint for age discrimination we find for Plaintiff and assess her damages at $35,000. (Note—damages may be economic and non-economic)
or

_____ 6. On the Complaint for age discrimination we find for Defendant.

### COUNT 4—Negligent Evaluation

(Check only one as to this count)

___x___ 7. On the Complaint for negligent evaluation we find for Plaintiff and assess her damages at $25,000. (Note—damages may be economic and non-economic)
or

_____ 8. On the Complaint for negligent evaluation we find for Defendant.

In this appeal, defendant argues that it is entitled to a new trial because the jury's verdict is ambiguous and internally inconsistent. More specifically, defendant maintains that

[t]he verdict in this case was inconsistent. It is impossible to determine whether the award for

negligent evaluation duplicates the award for age discrimination. It is impossible to determine whether the award for age discrimination includes any economic damages.

The trial court, at a hearing conducted on a motion filed by plaintiff for settlement of judgment, determined that an award of $110,000 was appropriate because the jury intended to award separate and distinct damages to plaintiff for her claims of age discrimination and negligent evaluation. The trial court reaffirmed this determination at the hearing conducted on defendant's motion for a new trial.

"[T]he general rule is that where a verdict in a civil case is inconsistent and contradictory, it will be set aside and a new trial granted." *Harrington v Velat,* 395 Mich 359, 360; 235 NW2d 357 (1975). However, "it is fundamental that every attempt must be made to harmonize a jury's verdicts" because "[o]nly where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside." *Granger v Fruehauf Corp,* 429 Mich 1, 9; 412 NW2d 199 (1987). In the present case, in which plaintiff sought $62,595 in damages for lost wages and twice that amount for noneconomic losses, we agree with the trial court that the jury's verdicts are not irreconcilable. Accordingly, we quote with approval the following language of the trial court:

> It seems then ultimately we are stuck with the jury verdict form which reflects the verdict as returned by the jury which we carefully structured in a late-night deliberation, thinking that we had prepared a form which would properly address the complexity of the various counts of this case and believing that we had foreclosed the possibility of a conflicting, impossible, or vague and ambiguous

verdict. The result suggests that perhaps we should have spent some more time and we could have done a far better job. We cannot then go back and ask the jury to re-evaluate the case and do anything but respond in the form which they have already been asked by us to respond.

They have been told that they should separately consider each count and to determine the total damages attributable to each count, regardless of whether it may duplicate damages in another count. The proofs were susceptible to no other construction other than there was one economic loss. The jury found for plaintiff and assessed damages for economic loss only in Count i. As to Count ii, we have a no-cause and they have spared us any problem of interpretation.

As to Count iii, it was the jury's prerogative to find whatever damages were, if any, attributable to that count, and, as indicated, they could find economic and non-economic damage. There clearly were proofs of a single economic loss. Since they had already ascertained the amount of economic loss as they were dealing with Count i of the form, I would construe the—their determination of Count iii to be an assessment of no economic loss and a thirty-five thousand dollar non-economic loss.

Count iv again was a count as to which they might find both economic and non-economic loss. There was a single economic loss, as I have indicated, in the proofs. Their amount is less. They clearly found no economic loss as to Count iv. To relate Count iii to Count iv, however, it is possible under the proofs that separate non-economic losses would be attributable to the negligent evaluation, what could be—could have been found to be a sham of testing and instruction, failure to give consideration to the years of service and to the demonstrated ability. These could be separate non-economic damages from those directly attributable to the finding of discrimination because of age.

Giving this construction to the verdict form, there would be a judgment then in favor of plain-

tiff in the amount of the three counts added together or one hundred ten thousand dollars.

Second, defendant contends that the trial court erred in denying its motion for a new trial by finding that the award of $50,000 on plaintiff's claim for breach of contract was not excessive. More specifically, defendant argues that plaintiff is not entitled to the full $50,000 award because she failed to mitigate her damages. We disagree.

In *Higgins v Kenneth R Lawrence, DPM, PC,* 107 Mich App 178, 181; 309 NW2d 194 (1981), this Court stated:

> It is well established that a plaintiff must make every reasonable effort to mitigate damages. *Edgecomb v Traverse City School Dist,* 341 Mich 106, 115; 67 NW2d 87 (1954); *Rich v Daily Creamery Co,* 296 Mich 270, 282; 296 NW 253 (1941). Such a defense, however, is an affirmative one, and proof of plaintiff's failure to mitigate rests upon the defendant. *Fothergill v McKay Press,* 374 Mich 138; 132 NW2d 144 (1965); *Froling v Bischoff,* 73 Mich App 496, 499; 252 NW2d 832 (1977). A wrongfully discharged employee is obligated to mitigate damages by accepting employment of a "like nature". *Flickema v Henry Kracker Co,* 252 Mich 406; 233 NW 362 (1930); *Michigan Employment Relations Comm v Kleen-O-Rama,* 60 Mich App 61, 230 NW2d 308 (1975). The criteria for determining "like nature" include the type of work, the hours of labor, the wages, tenure, working conditions, etc. Whether or not an employee is reasonable in not seeking or accepting particular employment is a question for the trier of fact. 2 Restatement Agency, 2d, § 455, comment d, p 373; Restatement Contracts § 336, p 537; 11 Williston, Contracts (3d ed), § 1359, p 306.

See also *Riethmiller v Blue Cross & Blue Shield of Michigan,* 151 Mich App 188, 194; 390 NW2d 227 (1986).

Following her termination from defendant's restaurant in February, 1984, plaintiff began looking for a job in April or May, 1984. She submitted applications at several local restaurants, but received no job offers. In June, 1984, she began working in a food-processing plant, sorting cherries, and continued working there until September, 1984, when she contracted dermatitis on her hands from cherry juice and could no longer continue. In October, 1984, she began working part-time as a waitress at a local restaurant, but quit on August 15, 1985, and has not worked since that date. In April, 1985, she refused defendant's offer of reemployment as a waitress in defendant's restaurant, and in July, 1985, she began receiving social security benefits.

At trial, plaintiff testified that she had intended to work at defendant's restaurant until her sixty-fifth birthday. She also explained that she had found it very difficult to wait tables in the wake of her termination by defendant because her self-confidence had declined. Marilyn Ann Fitzgerald, M.A., a psychologist who examined plaintiff in September, 1986, opined that plaintiff suffered from clinical depression as a result of her termination from employment at defendant's restaurant and should undergo psychotherapy to restore her self-confidence and self-esteem. Fitzgerald emphasized that, after her termination, plaintiff had "become a recluse . . . stayed at home; . . . was withdrawn; . . . had a difficult time finding another job; . . . [and] exhibited symptoms of depression with frequent crying, loss of appetite, loss of sleep." In light of this testimony, we find that there was sufficient evidence to support the findings that plaintiff was reasonable in rejecting defendant's offer of reemployment and that plaintiff's early retirement resulted from her termina-

tion of employment by defendant. Accordingly, we discern no ground on which to disturb the trial court's denial of defendant's motion for a new trial based on plaintiff's alleged failure to have mitigated her damages.

Third, defendant contends that the trial court erred in denying its motion for a new trial by finding that the evidence adduced at trial supported a finding that plaintiff's age was a determining factor in defendant's decision to terminate plaintiff's employment. We disagree.

The Civil Rights Act, MCL 37.2202(a); MSA 3.548(202)(a), provides that an employer shall not

> [f]ail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Generally, a plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Marsh v Dep't of Civil Service (After Remand),* 173 Mich App 72, 80; 433 NW2d 820 (1988), lv den 432 Mich 874 (1989). A successful age-discrimination plaintiff need not prove that age was the sole reason for his or her discharge, but rather that age was a determining factor in that action. *Balwinski v Bay City,* 168 Mich App 766, 769; 425 NW2d 218 (1988); see also *Ewers v Stroh Brewery Corp,* 178 Mich App 371, 381; 443 NW2d 504 (1989).

In this case, plaintiff was sixty years old at the time of her discharge from defendant's employment. At trial, she testified that she was the oldest person among the wait staff, of which the average age, she estimated, was twenty-seven years. Forest

Nelson, born on April 17, 1957, and the assistant food and beverage director of defendant's restaurant at the time of plaintiff's termination from employment, testified that his supervisor, John Sisson, wanted to create a "new identity" for defendant's restaurant and, in order to bring about that new identity, wanted a young, male wait staff. Nelson testified, in part, as follows:

> *Q.* You indicated that certain individuals, as far as you were concerned, were going to be cleaned-out and that there was a conversation that you had with somebody. Who was that that you had the conversation with?
>
> *A.* With John.
>
> *Q.* That's John Sisson?
>
> *A.* Right.
>
> *Q.* What was the nature of the conversation? Was it as to any specific members of the wait staff at the Top of the Park?
>
> *A.* As long as we were going to close the staff, there were several people that we would have no problem if they did not pass the test, and that was Harriet Hughes and Keith Franfort and Todd Wright.
>
> *Q.* Why was that, that you would have been more than happy to have them fail the exam?
>
> *  *  *
>
> *A.* We just—in our conversations, we just decided that they were not needed, they weren't part of the type of employee that we wanted up there. Keith had been there for quite some time. Todd had been there quite some time. They were real cocky. Harriet was—she stuck out somewhat like a sore thumb. She was the only woman who worked up there. She was, in appearance, quite older than everyone that worked up there. There were times where someone might say they didn't want the woman to wait on them; they wanted a guy to wait on them, and she just got lumped-up in that group of people that we just decided it wouldn't be so bad

if [defendant's restaurant,] the Top of the Park[,] opened up without them.

*Q.* As far as you were concerned, what significance was there in her age?

*A.* I think it was—my own opinion, I think it was quite significant.

\* \* \*

*Q.* Why did you feel it was quite significant to you?

*A.* She could not work as many tables as the other guys. It was suggested several times by myself and other people, John Sisson, Dan Hitchens, that she could not handle a large station. The Top of the Park was a very exclusive dining room. I'm sure it was the most expensive room in Traverse City. For that reason, they wanted—we wanted the image, for trade, as a young, vibrant wait staff.

*Q.* Is that what you meant when you said she didn't fit or she stuck out like a sore thumb?

*A.* Yes.

Nelson further testified that the work-performance examination which plaintiff was forced to take in January, 1984, was graded in a biased fashion so as to preclude her from ever passing it. He stated that, due to this bias in grading—a bias which, had plaintiff been twenty-five years old, would not have been so marked—"I don't believe she stood a chance." Nelson explained:

I don't think that, if she was twenty-five years old, as much emphasis probably would have been put on it, simply because, as an employee, Harriet did try real hard. You would not have the problems with Harriet you might have with younger guys, you know, coming in late and dressing on the way up in the elevator, that type of thing. She was always ready to work. It was my experience that as far as her side-work and such, it was always meticulously done. The only problem was

that, as I said, she did stand out up there because of her age.

Moreover, the suggestion in defendant's appellate brief that Nelson's testimony was inadmissible under MRE 701 because it was not "rationally based on the perception of the witness" is without merit. He had participated in the training classes which were given to defendant's employees before their performance examinations, had participated in the oral portion of the performance examinations, and had in fact participated in grading the written portions of the performance examinations. Further, Nelson testified that he and his supervisor, John Sisson, had met "dozens of times a day" concerning the operation of defendant's business.

Finally, defendant contends that the trial court erred in denying its motion for a new trial by finding that the evidence adduced at trial supported a finding that defendant was negligent in evaluating plaintiff's work performance.[1] We disagree.

In addition to the testimony of Forest Nelson, part of which has already been reviewed in this opinion, it was revealed at trial that, during her many years of employment with defendant, plain-

---

[1] In defendant's appellate brief, the only authority cited in support of the assertion that "plaintiff did not establish that the defendant was negligent in evaluating her job performance" is "*Scampi v Ford Motor Co*, 102 Mich App 606 (1981)." The citation should be *Schipani v Ford Motor Co*, 102 Mich App 606; 302 NW2d 307 (1981). In any case, we emphasize that defendant's argument is restricted to a discussion of the facts and how those facts do not establish negligent evaluation. Nowhere does defendant argue, or cite authority for the proposition, that the *Schipani* case was wrongly decided and that plaintiff's claim for negligent evaluation is precluded in this case by her claim for breach of employment contract. See, e.g., *Mitchell v General Motors Acceptance Corp*, 176 Mich App 23, 34-35; 439 NW2d 261 (1989), and cases cited therein. Accordingly, defendant has not preserved this issue for our review. *Sargent v Browning-Ferris Industries*, 167 Mich App 29, 32-33; 421 NW2d 563 (1988); *Dep't of Transportation v Pichalski*, 168 Mich App 712, 722; 425 NW2d 145 (1988).

tiff never received an evaluation which criticized her performance and, to the contrary, was commended by all of her former supervisors. It was also revealed that the written portion of the work-performance examination in January, 1984, which plaintiff was said to have failed, was taken, and passed, by her only seven months earlier in June, 1983. We agree with the trial court that this evidence sufficiently supported the finding that defendant was negligent in evaluating plaintiff's work performance.

Affirmed. Costs to plaintiff.