RASHEED v CHRYSLER MOTORS CORPORATION

Docket No. 129620. Submitted July 14, 1992, at Detroit. Decided October 5, 1992, at 9:00 A.M. Leave to appeal sought.

Muhammad Rasheed brought an action in the Wayne Circuit Court against his former employer, Chrysler Motors Corporation, and former supervisor, James Senart, alleging, inter alia, that his disciplinary discharge and prior suspensions were motivated by religious discrimination. Before filing suit, the plaintiff initiated grievance procedures that resulted in his eventual rejection of an offer of reinstatement with full seniority but without back pay. A jury returned a verdict for the plaintiff and awarded him damages, and the court, Richard P. Hathaway, J., ordered Chrysler to offer the plaintiff employment as a new employee with no seniority. The defendants appealed, and the plaintiff cross appealed.

The Court of Appeals held:

1. The trial court did not abuse its discretion in denying the defendants' motion for a directed verdict. Reasonable jurors could have reached different conclusions with regard to the plaintiff's claim of religious discrimination after he presented a prima facie case based on disparate treatment and the defendants presented nondiscriminatory reasons for the treatment.

2. The trial court did not abuse its discretion in limiting the admissibility of the plaintiff's personnel file to that portion that related to the three years immediately preceding his discharge. The ruling was consistent with the parties' collective bargaining agreement, which provided that only that time period could be considered in deciding whether an employee could be discharged. Furthermore, evidence of the plaintiff's personnel records before that period would have been more prejudicial than probative.

3. Under the circumstances of this case, the trial court did not abuse its discretion in ordering that the plaintiff be rein-

REFERENCES

Am Jur 2d, Civil Rights §§ 193, 307-309, 432-435, 438-442; Job Discrimination §§ 1231-1245; 2414.

See the Index to Annotations under Backpay; Discharge from Employment or Office; Discrimination; Equal Employment Opportunity.

stated, but treated as a new employee. Although the plaintiff forfeited any right to back pay when he refused Chrysler's offer of reinstatement, he did not forfeit the right to reinstatement.

4. The trial court did not err in limiting the plaintiff's recovery of damages to injuries that occurred within the statutory period of limitation for his claim. The period was not tolled under the "continuing violations" theory because the plaintiff failed to establish that the last act of discrimination was part of a series of past discrimination of which he became aware only at the time of the last act.

Affirmed.

J. C. KINGSLEY, J., dissenting in part, stated that a discharged employee's refusal of an employer's unconditional offer of reinstatement, unless reasonable under the circumstances, should forfeit the employee's right to reinstatement.

1. CIVIL RIGHTS — WRONGFUL DISCHARGE — MITIGATION OF DAMAGES — OFFERS OF REINSTATEMENT — BACK PAY.

An employer's unconditional offer to reinstate an employee allegedly discharged in violation of the employee's civil rights tolls the employer's liability for back pay because rejection of the offer constitutes a failure to mitigate damages.

2. CIVIL RIGHTS — WRONGFUL DISCHARGE — REINSTATEMENT.

A discharged employee who prevails against the employer in an action for discrimination under the Civil Rights Act does not automatically forfeit the right to reinstatement for refusing, before the filing of the action, an unconditional offer of reinstatement by the employer (MCL 37.2101 · et seq.; MSA 3.548[101] et seq.).

3. CIVIL RIGHTS — LIMITATION OF ACTIONS — CONTINUING VIOLATION.

The statute of limitations applicable to actions for discrimination under the Civil Rights Act may be tolled in a case involving a continuing violation, i.e., one where a present violation is suffered within the limitation period and where there is a policy of discrimination, a continuing course of conduct, and present effects of past discrimination (MCL 37.2101 et seq.; MSA 3.548[101] et seq.).

*Durant & Durant, P.C.* (by *Kirsten Frank*), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *George R. Ashford* and *Eric J. Pelton*), for the defendants.

Before: FITZGERALD, P.J., and HOOD and J. C. KINGSLEY,* JJ.

HOOD, J. Plaintiff brought an action for religious and racial discrimination, intentional infliction of emotional distress, religious harassment, and fraud against his employer and immediate supervisor. All claims except the religious discrimination claim were dismissed following defendants' motion for a directed verdict at the close of plaintiff's proofs. Defendants appeal as of right from a judgment in plaintiff's favor and from the trial court's order of reinstatement. Plaintiff cross appeals from the trial court's ruling that prohibited him from collecting damages for discriminatory acts that occurred outside the three-year period of limitation and from the trial court's refusal to order full reinstatement, with seniority and back pay, to his former position. We affirm.

Plaintiff had been employed by defendant Chrysler Motors Corporation since 1967. The parties stipulated that, in 1978, plaintiff became a member of the American Muslim Mission. In 1981, plaintiff transferred from Chrysler's Hugo Foundry plant to its Trenton plant. Plaintiff asserts that after the transfer he was subjected to daily harassment relating to his religious beliefs from both co-workers and his supervisor, defendant James Senart. Plaintiff produced evidence at trial that he made known the difficulties he was experiencing to his supervisor and other managerial and union personnel but that they failed to rectify the problem. Senart informed plaintiff of his dislike for those who adhere to plaintiff's religion and often encouraged or participated in the harassment.

Plaintiff was involved in three disciplinary inci-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dents shortly before being discharged. The first involved plaintiff's attempt to participate in the fast of Ramadan, which began near the first of June 1984. During this holy month, plaintiff was required to fast from sunup until sundown. He could not break his fast during his regularly scheduled lunch period (8:00 P.M. until 8:30 P.M.). Although Senart would not accommodate his need to take a later lunch break, plaintiff was able, when Senart went on vacation, to make arrangements with the substitute supervisor, Pat Crowe, to take a later break. When Senart returned, he revoked this privilege and suspended plaintiff for one day for abuse of lunch privileges. Plaintiff denied abusing the lunch break and was eventually reimbursed for this involuntary layoff.

Shortly after the one-day suspension, plaintiff received a three-day suspension for disobeying his supervisor's direct order to retrieve certain script charts. Plaintiff denied disobeying the order and pointed out that the suspension came on the heels of his refusal to work voluntary overtime. Plaintiff was also reimbursed for this suspension.

On July 12, 1984, the day of the suspension that led to his discharge, plaintiff was charged with destroying company property, specifically, scrap cylinder heads. Plaintiff maintains that he handled the cylinder heads in the usual manner and tossed them into the divider with the normal amount of force used when handling scrap heads. After tossing the heads into the divider, plaintiff was escorted out of the plant by two guards. A week later, plaintiff was notified by mail of his discharge.

Plaintiff availed himself of the grievance procedure provided in his union contract to challenge his discharge. Thirteen months later, pursuant to a settlement between his union and Chrysler,

plaintiff was offered his job back with seniority, but without back pay, and with the discharge reduced to a disciplinary layoff. Plaintiff refused the offer because it did not include back pay and because he felt the offer was conditioned upon him admitting that he committed the infraction for which he was discharged. The grievance was not arbitrated. This suit followed.

Plaintiff prevailed on his claim of religious discrimination, and the jury awarded him damages in the amount of $61,300. After trial, a hearing was held to determine whether the trial court would use its equitable powers to reinstate plaintiff to his former position. The court ruled that defendant was to offer plaintiff employment as a new employee, that is, with no seniority, within the following sixty days.

Defendants first argue that the trial court erred in denying their motion for a directed verdict on plaintiff's religious discrimination claim. This Court reviews a trial court's denial of a motion for a directed verdict for an abuse of discretion. *Howard v Canteen Corp*, 192 Mich App 427, 431; 481 NW2d 718 (1992). This Court reviews all the evidence, including all reasonable inferences that can be drawn from it, in the light most favorable to the nonmoving party to determine whether there existed a question of fact for the jury's determination. *Stoken v J E T Electronics & Technology, Inc,* 174 Mich App 457, 463; 436 NW2d 389 (1988).

To successfully bring a religious discrimination claim under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, a plaintiff must make a prima facie showing of religious discrimination by demonstrating either disparate treatment or intentional discrimination. *Pitts v Michael Miller Car Rental,* 942 F2d 1067, 1070 (CA 6, 1991); *Smith v Consolidated Rail Corp,* 168 Mich App

773, 778; 425 NW2d 220 (1988). To establish dispa-
rate treatment, the plaintiff must show that he
was a member of a protected class, and that he
was treated differently than persons of a different
class for the same or similar conduct. *Singal v
General Motors Corp,* 179 Mich App 497, 503; 447
NW2d 152 (1989). The employer then has the
burden of establishing a legitimate reason for the
treatment. If the employer carries its burden, the
plaintiff must establish that the reason or reasons
presented by the employer were a mere pretext.
*Pitts, supra.* The plaintiff may establish pretext by
showing either that it is more likely that a dis-
criminatory reason motivated the employer's ac-
tion or that the reasons proffered are simply not
credible. *Pitts, supra* at 1071.

Plaintiff's claim is essentially one of disparate
treatment. Plaintiff alleges that he was discharged
for engaging in conduct that other employees regu-
larly engaged in without being discharged. He
further asserts that he was treated differently
because he is a Muslim.

Plaintiff established through his own testimony
as well as the testimony of Larry Allen, Benny
Wright, and Terri Williams that he was dis-
charged for tossing a scrap cylinder head into a
divider and that others engaging in similar con-
duct were not fired. In response, defendants offered
testimony establishing that plaintiff was fired for
destroying company property. There was testi-
mony from Charles Ferns and Senart that the
cylinder head was destroyed and there was dam-
age to the plant floor caused by plaintiff's throwing
the head into the divider.

It was then necessary for plaintiff to establish
that defendants' reasons for discharging him were
a mere pretext. Plaintiff presented testimony from
Larry Allen that the cylinder head was not de-

stroyed and that there was no damage to the floor. Further, plaintiff testified about a history of harassment from defendant Senart concerning plaintiff's religion. In addition, there was testimony from Senart that plaintiff was a good repairman and a productive and capable worker.

The resolution of this case rests almost entirely on the jurors' assessment of each witness' credibility. The verdict rendered indicates that, in the jury's estimation, plaintiff's testimony and the testimony of witnesses who supported his version of the events were more credible than defendants' testimony.

If reasonable jurors could reach different conclusions, a motion for a directed verdict should be denied. The trial court cannot substitute its judgment for that of the jury. *Jenkins v Raleigh Trucking Services, Inc,* 187 Mich App 424, 427; 468 NW2d 64 (1991). The trial court did not commit error requiring reversal when it denied defendants' motion for a directed verdict.

Defendants next argue that the trial court erred in refusing to allow plaintiff's entire personnel file into evidence.

The decision to admit evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Michigan Microtech, Inc v Federated Publications, Inc,* 187 Mich App 178, 186; 466 NW2d 717 (1991). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made. *People v Milton,* 186 Mich App 574, 576; 465 NW2d 371 (1990). Only relevant evidence is admissible. MRE 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403; *Dunn*

v *Nundkumar,* 186 Mich App 51, 55; 463 NW2d 435 (1990).

The trial court ruled that, under the collective bargaining agreement, defendants were allowed to go back only three years when making a decision to discharge and that, therefore, those were the only relevant years. However, the trial court also determined that, if older information contained in plaintiff's personnel file was needed for impeachment purposes, it would make a ruling at the time the issue arose during trial.

The trial court did not abuse its discretion by disallowing the introduction of plaintiff's entire personnel file. As noted by the trial court, evidence of plaintiff's disciplinary history before the three-year period was not relevant to the decision to discharge. Further, even if marginally relevant, the evidence was substantially more prejudicial than probative. The trial court provided adequate reasons for its ruling on the record and gave defendants an opportunity to use the excluded evidence for impeachment purposes.

Next, both plaintiff and defendants find fault with the trial court's order of reinstatement. At the reinstatement hearing, the trial court ordered defendants to offer plaintiff a position as a new employee within sixty days.

Plaintiff had been offered his old job with full seniority and benefits a little over a year after his discharge pursuant to the union's settlement of his grievance against Chrysler. The discharge was to be reduced to a disciplinary layoff. Defendants argue that plaintiff forfeited his right to back pay and reinstatement because he failed to accept their unconditional offer of reinstatement. Plaintiff argues that he should have been reinstated with back pay and seniority. As stated before, plaintiff declined the offer.

An employee who is wrongfully discharged has an obligation to mitigate damages by accepting employment of a "like nature." In determining whether employment is of a like nature, the trial court looks at the type of work, the hours, the wages, and the working conditions. *Hughes v Park Place Motor Inn, Inc,* 180 Mich App 213, 220; 446 NW2d 885 (1989).

Defendants argue that the trial court erred in reinstating plaintiff when it had ruled earlier, when it limited back pay, that plaintiff had unreasonably rejected an unconditional offer of reinstatement. Plaintiff argues that the trial court should have reinstated him with back pay and seniority. Plaintiff further argues that accepting the initial reinstatement offer would not have made him whole because the religious discrimination would have continued. He also argues that, at the time he rejected the offer, he thought acceptance meant forfeiting his right to pursue other legal remedies. The record, however, does not support plaintiff's last claim. It is clearly stated in the offer of reinstatement that the settlement of the grievance would not affect the outcome of any other proceeding.

In support of his position that he is entitled to reinstatement and back pay, plaintiff cites *Ford Motor Co v Equal Employment Opportunity Comm,* 458 US 219; 102 S Ct 3057; 73 L Ed 2d 721 (1982), *Morvay v Maghielse Tool & Die Co, Inc,* 708 F2d 229 (CA 6, 1983), and *Boomsma v Greyhound Food Management, Inc,* 639 F Supp 1448 (WD Mich, 1986). In *Ford, supra* at 731, the Court noted that the purpose of the reinstatement rule was to encourage compliance with civil rights laws because reinstatement addresses the discriminatory effect of an unfair discharge. This conclusion is also supported by *Morvay, supra.* In *Boomsma,*

*supra,* however, the plaintiff, who was not seeking reinstatement, forfeited his right to back pay because of his refusal to accept the employer's offer of reinstatement even though earlier in the opinion the court held that the employer had failed to adequately accommodate the plaintiff's religious beliefs.

Plaintiff's primary complaint in the case at bar was that he was discharged for discriminatory reasons. Reinstatement to his former position would have reversed that discriminatory act. However, none of the cases cited by plaintiff justify his refusal to accept Chrysler's offer of reinstatement, although they do support the conclusion that reinstatement is a preferred and uniquely effective remedy for a discriminatory discharge.

We agree with defendants that plaintiff is not entitled to any back pay that accrued after the date of the first offer of reinstatement. An unconditional offer of reinstatement tolls an employer's liability for back pay because rejecting it constitutes a failure to mitigate damages. See *Hughes, supra* at 220; see also *Figgs v Quick Fill Corp,* 766 F2d 901, 904 (CA 5, 1985); *Morvay, supra; O'Donnel v Georgia Osteopathic Hosp, Inc,* 748 F2d 1543, 1550-1551 (CA 11, 1984); *Fiedler v Indianhead Truck Line, Inc,* 670 F2d 806 (CA 8, 1982). However, despite federal precedent to the contrary, including *Boomsma,* we disagree with defendants' contention that plaintiff's rejection of Chrysler's offer also automatically forfeits his right to reinstatement. See *Giandonato v Sybron Corp,* 804 F2d 120, 125 (CA 10, 1986) (employee's refusal of unconditional offer of reinstatement forfeited right to back pay and reinstatement); *Stanfield v Answering Service, Inc,* 867 F2d 1290, 1296 (CA 11, 1986) (refusal of offer of reinstatement, unless reasonable, forfeits employee's right to reinstatement).

Although federal precedent is persuasive, this Court is not bound to follow it even where there is no Michigan law on point. We feel that following federal precedent in this case would lead to an unduly harsh result. Further, it would unnecessarily interfere with the trial court's ability to fashion an appropriate remedy. Flexibility in that regard is crucial to implementing justice in light of the jury's verdict.

In this case, on the basis of hotly contested evidence, the jury found that plaintiff had been the victim of religious discrimination. The trial court, although expressing disagreement with that result, had no power to substitute its judgment and overturn the jury's verdict. The court further had an affirmative obligation to implement the verdict and remedy the discrimination found.

The trial court could reasonably conclude that awarding plaintiff only the one year of back pay that accrued before the first offer of reinstatement was insufficient under the circumstances. The trial court did not abuse its discretion in exercising its equitable powers and reinstating plaintiff, albeit without seniority. However, this Court does not hold that reinstatement is required in all similar situations, only that ordering it in this case was not an abuse of discretion.

Plaintiff next argues that the trial court erred in limiting his damages to injuries that occurred within the three-year period of limitation.

After plaintiff rested, defendants moved for a directed verdict. As part of the motion, defendants sought to limit plaintiff's damages to injuries that occurred within the three-year limitation period before plaintiff filed the complaint. Plaintiff filed his complaint on July 7, 1987.

Both parties erroneously argue that this issue is unpreserved. Plaintiff preserved this issue for ap-

peal by responding to the motion for a directed verdict although he did not place another objection on the record at the time of jury instructions. Defendants likewise preserved this issue by filing a motion for summary disposition. See MCR 2.111(F)(2). The trial court therefore did not err in considering this argument.

Plaintiff further argues that the trial court erred in limiting his damages because the period of limitation was tolled under the "continuing violation" theory. This theory was adopted by the Michigan Supreme Court in *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505; 398 NW2d 368 (1986), in an effort to lessen the harsh effects of strict adherence to the requirements of the statute of limitations. This theory allows a plaintiff to seek damages for violations that occurred outside the limitation period if the violations are "continuing" in nature and at least one of the discriminatory acts falls within the statutory limitation period.

Plaintiff must show initially that he has suffered a present violation, that is, one that occurred within the period of limitation. *Bell v Chesapeake & O R Co,* 929 F2d 220, 223-224 (CA 6, 1991). If this threshold requirement is met, plaintiff is then required to show all of the following: (1) a policy of discrimination, (2) a continuing course of conduct, and (3) the present effects of past discrimination. This means that plaintiff must first show that the employer engaged in a policy of discrimination. Where the employer knew or should have known of the discriminatory acts, it can be held responsible for the actions of its employees. *Id.*

In the case at bar, plaintiff testified that he continually complained to both union and management about the difficulties he experienced on the job. According to plaintiff's testimony, he was

continually harassed by both his supervisor and
fellow employees. This is sufficient to satisfy the
first element.

Secondly, the discriminatory acts must be suffi-
ciently related to constitute a pattern. *Id.* Looking
at the testimony in the light most favorable to
plaintiff, it is clear that most of the harassment
focused on plaintiff's religious beliefs and practices
and the harassment occurred relatively frequently.
The second element of the test is therefore also
met.

Plaintiff's claim that the discriminatory acts
were continuous in nature, however, fails because
he does not meet the third requirement. Plaintiff
must show that the last act was the present effect
of past discrimination. This requires a showing
that plaintiff became aware that he was being
victimized only when the last act occurred. The
court in *Bell, supra* at 225, held that if any act
that should have made the plaintiff aware that he
was injured and that should have provided suffi-
cient impetus to assert his rights falls outside the
period of limitation, the plaintiff is left without a
remedy because of his failure to pursue and pro-
tect his rights when he first became aware of the
injury.

Evidence that plaintiff in the past had made
reports of discriminatory acts and treatment to
supervisory personnel is proof that he was aware
of injuries caused by acts of discrimination that
occurred before his discharge. His failure to pur-
sue those claims within the statutory period pre-
cludes him from seeking damages for those actions
at this late stage. The trial court properly denied
plaintiff the right to seek damages for those alleg-
edly discriminatory acts that occurred outside the
three-year period of limitation.

After reviewing all the matters asserted on ap-

peal and cross appeal, we find no error requiring reversal.

Affirmed.

FITZGERALD, P.J., concurred.

J. C. KINGSLEY, J. *(dissenting in part).* I respectfully dissent from that part of the majority's opinion that affirms the trial court's reinstatement of plaintiff as an equitable remedy. As the majority acknowledges, plaintiff was offered his same job with full seniority and benefits, but refused the offer. In spite of finding that plaintiff rejected an offer of unconditional reinstatement, the trial court ordered his reinstatement as an employee saying:

> This Court does not believe that Chrysler terminated Mr. Rasheed as a result of his religious beliefs, but due to the fact that he abused his position in taking extended time off away from his job. And also he abused his position; he damaged company property.
>
> The biggest problem that I have with this particular case is that this Court is presented with an employee who has 17 years of employment with this particular company.
>
> \*  \*  \*
>
> Mr. Rasheed is requesting reinstatement to his prior job, to his prior job, to his old job.
>
> This Court does, however, believe that Mr. Rasheed, as I stated earlier, breached his obligation to mitigate his damages.
>
> This Court at this point in time is going to carve out an equitable determination for Mr. Rasheed.
>
> I do believe that as a result of Mr. Rasheed not mitigating his damages and not taking his job back, he believing, Mr. Rasheed believing, that his unconditional offer of reinstatement was really conditional to him because he believed that the

status of his position would in fact be changed as a result of him coming back as a person who had a disciplinary suspension on his record.

This Court for all intents and purposes does not buy that argument. However, this Court does believe that as a result of him not mitigating his damages, he lost all his bumping rights. He lost all of his seniority rights.

This Court is going to order Chrysler Car Company to give Mr. Rasheed an offer of employment within the next 60 days as a new worker. As a new laborer.

He has to come back within Chrysler Motor Car Company as a new employee and it will be up to Chrysler Motor Car Company to determine what type of employment that is. But it has to be of some employment.

I am not going to give him his old job back.

I do believe that he has lost it as a result of he, Mr. Rasheed, failing to mitigate his damages.

Although this Court is not required to follow federal decisions when there is no precedent in Michigan law, it may do so when the federal cases are on point. In my view, the better reasoning is found in those cases that stand for the proposition that, unless it is reasonable under the circumstances, an employee's right to reinstatement is forfeited by refusing an unconditional offer of reinstatement. *Ford Motor Co v Equal Employment Opportunity Comm,* 458 US 219; 102 S Ct 3057; 73 L Ed 2d 721 (1982); *Giandonato v Sybron Corp,* 804 F2d 120, 125 (CA 10, 1986); *Stanfield v Answering Service Inc,* 867 F2d 1290, 1296 (CA 11, 1989).

The rationale for this approach was explained by the *Stanfield* court as follows:

In *Ford Motor Co v EEOC* . . . the Supreme Court stated that the laws should be designed to

encourage defendant employers to make unconditional, curative job offers to claimants in an effort to end discrimination quickly . . . . Once such an offer is made, claimants forfeit their right to reinstatement unless their refusal of the employer's offer is reasonable. A contrary holding would allow an employee to avoid her obligation to mitigate damages by holding out for a court-ordered reinstatement. [*Stanfield, supra* at 1296.]

Neither the record nor the cases on which plaintiff relies support his claim that his refusal of reinstatement was reasonable. As a result, I believe that the trial court did not have the authority to order any reinstatement of the plaintiff by the defendant.