WILLIAM H. GRIDLEY v. THE GLOBE TOBACCO COMPANY.

*Contract of sale—Fraud—Rescission—Reasonable time.*

1. The rule that certain acts shall be performed in a reasonable time requires that the party should exercise such reasonable diligence as under all then and *subsequently existing* circumstances might be fairly expected. *Clark v. Mowyer*, 5 Mich. 472; *Stange v. Wilson*, 17 Id. 347; *Grant v. Bank*, 35 Id. 515.

2. To entitle a party to rescind a contract on the ground of fraud or false representations he must act promptly after he has discovered the fraud or falsity of the representations; but he is entitled to a reasonable time to investigate and ascertain whether the representations made are true.

3. When the *facts* are undisputed, what is a reasonable time is a question of law; but when they are controverted, or where motives of a party are involved, it is a proper question for a jury.

4. In this case it is held that defendant's first four requests to charge should have been given, and that the court erred in taking the case from the jury.

Error to Wayne. (Gartner, J.) Argued June 20, 1888. Decided October 12, 1888.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson,* for appellant, contended:

1. There was no unreasonable delay in offering to return the horse and in rescinding the sale; citing *Felt v. Evaporating Co.*, 52 Mich. 602, 604.
2. Had Wagner, the real defendant, elected to keep the horse, he could recover damages for breach of warranty, as, according to plaintiff's testimony, his representations amounted to a warranty that the horse was sound, kind, and gentle; citing *Daniels v. Aldrich*, 42 Mich. 59.

*Palmer & Palmer*, for plaintiff, contended:

1. A breach of warranty does not give the right to rescind; citing *Thornton v. Wynn*, 12 Wheat. 189.
2. There is no testimony tending to prove fraud in the transaction; citing Cooley, Torts, 499, 500.
3. As to duty of Wagner if he desired to rescind on the ground of fraud, counsel cited *Wilbur v. Flood*, 16 Mich. 45; Cooley, Torts, 504; and on the question of reasonable time, cited Cooley, Torts, 503, 504; *Wilbur v. Flood*, 16 Mich. 45; *Druse v. Wheeler*, 26 Id. 195, 196.

CHAMPLIN, J.    This action was brought to recover the amount of a promissory note given by defendant for the accommodation of Robert Wagner upon the sale of a horse by plaintiff to Wagner.

The defense was made by Wagner, who claimed that the plaintiff, at the time of the sale of the horse to him, warranted such horse to be sound, whereas he was unsound; and that, soon after he discovered the horse was unsound, he tendered the horse back to plaintiff, and demanded the note; and that said plaintiff then and there admitted that he had deceived said Wagner, and agreed to receive back the horse, and return the note, upon payment of $20; and thereafter he tendered the horse and $20, which plaintiff refused to receive, and also refused to return the note.

Upon the trial there was no dispute as to the fact of the sale and warranty of soundness as claimed by defendant. The fact of unsoundness was disputed, and evidence upon this point was introduced by both parties.    There

71 MICH.—34.

was no conflict in the testimony that Wagner notified plaintiff that the horse was unsound, and wanted him to take him back, and give up the note. The testimony was conflicting as to whether plaintiff admitted the unsoundness, but plaintiff admits that he offered to take the horse back, and give up the note, upon Wagner's paying him for the use of the horse, which plaintiff claims was agreed upon at $30, while defendant says it was $20.

They also disagreed in their testimony upon the trial as to the time when Wagner notified plaintiff that the horse was unsound, and offered to return him. The testimony of Wagner tended to show that as soon as he became satisfied that the horse was unsound he offered to return him to plaintiff; that he found, after using him, he became lame, and showed a stiffness in his shoulders; that plaintiff had told him that the horse had not been used at heavy work, but merely as a carriage horse, and he must be careful with him at first; that on this account he let the horse lay off from work and rest two or three times for two or three days at a time, and at two different times a week at a time, but after using the horse a day or so he would be as bad as ever.

The sale was made on December 11, 1886, and the plaintiff's refusal to take the horse back on account of the disagreement as to the amount which should be paid for his use was in the latter part of February.

The defendant's counsel requested the court to charge the jury as follows:

"1. The plaintiff, by his own testimony, establishes the fact that at the time he sold the horse to Wagner he represented that the horse was sound, kind, and gentle, and that he, the plaintiff, knew that Wagner purchased the horse relying upon this representation. This being established by the plaintiff's own testimony, it follows that defendant had a right, within a reasonable time

after he became satisfied that the representation as to soundness was untrue, to return the horse, and demand the note he gave in payment for it.

"2. That in considering the question whether Wagner offered to return the horse within a reasonable time after he became satisfied that the representation as to soundness was not true, you are to understand that it was Wagner's right to retain the horse a sufficient length of time to fully establish, by trying the horse, whether or not the horse was unsound, and, if unsound, whether the unsoundness was of such a nature as to seriously affect his value for the use for which he purchased him; and, if he took no longer time for this than was reasonable under the circumstances, his offer to return the horse was seasonable.

"3. That even though others than Wagner might have known that the horse was unsound earlier than Wagner did, it could not affect Wagner's right to return the horse. He is only bound to act within a reasonable time after he had personal knowledge or information upon the matter in question.

"4. If you find that Wagner did retain the horse while he did in good faith try him with a view to ascertaining whether he was all right, as represented, and only became satisfied that he was unsound within a short time before he offered to return him, and you find that he then offered to return the horse, and demanded his note, and you believe that the horse was not sound when sold, defendant is entitled to a verdict.

"5. That delay in offering to return the horse after Wagner had become satisfied that he was not sound, as represented, which was not either serious or injurious to the plaintiff, would not bar the defendant's right to return the horse and demand the note."

Each of these requests was refused, and the court instructed the jury that, the purchase having been made December 11, and Wagner having discovered that the horse was unsound within a week or 10 days thereafter, by his own testimony, and made no complaint about it, until about February 22, he did not act within a reasonable time, and could not come in on February 22 and rescind

the contract; and on this ground he directed a verdict for the plaintiff.

We do not think the court can be justified, under the testimony in this case, in taking it from the jury. What is a reasonable time must depend upon the circumstances of each particular case.    What would be reasonable under one state of facts would not be under another.    The rule that certain acts shall be performed in a reasonable time requires that the party should exercise such reasonable diligence as under all then and subsequently existing circumstances might be fairly expected.    *Clark v. Mowyer,* 5 Mich. 472; *Stange v. Wilson,* 17 Id. 347; *Grant v. Bank,* 35 Id. 528.    The testimony of Mr. Wagner was that he knew nothing about horses, and took this horse entirely upon the strength of the representations which Mr. Gridley made to him at the time of sale; that, among other things, Mr. Gridley said, when he told him that he wanted the horse to drive on a peddler's wagon:

" This horse has not been used, and you want to use him carefully, and work him in gradually, so that he won't be hurt."

He further testified that he noticed within a week or 10 days that something was the matter with the horse; that he appeared to be stiffened up; and so he thought the work was too hard for him, and he laid him off for a day to rest; and it went on from time to time, and he laid him off for a week at one time, and when he came out he acted quite bright, and he thought he was all right again; and so it went along for about 10 weeks.    On cross-examination the following testimony was elicited from the defendant:

" *Q.* The first time you ever spoke to Mr. Gridley about it was about three months after the horse was bought?

" *A.* No; about ten weeks.    I spoke to him as soon as I found out he was a bunged-up horse when I got him.

"*Q.* Did it take you ten weeks to find out that he was a bunged-up horse when you got him?

"*A.* Yes, sir; it did,—that is, to find out positively he was."

To entitle a party to rescind a contract on the ground of fraud or false representations he must act promptly after he has discovered the fraud or the falsity of the representations. He would, however, be entitled to a reasonable time to investigate and to ascertain whether the representations made were true. When the facts are undisputed, what is a reasonable time is a question of law; but where they are controverted, or where motives of a party are involved, it is a proper question for a jury. Here was testimony that the court had no right to ignore that defendant spoke to plaintiff about the horse not being as represented as soon as he found that he was unsound when he purchased him.

Defendant further testified that when he spoke to plaintiff about it he admitted that he knew the horse was unsound when he sold him; that he had previously been ailing, but that he had him treated, and he supposed he was all right. This testimony was also disputed by the plaintiff.

We think the defendant was entitled to have the first four requests above noticed given to the jury, and that the court erred in taking the case from the jury. The question whether the defendant offered to return the property should also have been submitted to the jury; and, if they should find the defendant's version of that portion of the transaction true, it was sufficient in law. The testimony disclosed that the horse was kept at a boarding stable, but the keeper had no lien, as defendant paid for his board to March 1.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.