COUCH *v.* MINING JOURNAL CO.

1. LIBEL—PLEADING—DAMAGES.
    In an action for libel by an attorney against a newspaper, testimony that plaintiff's business fell off in consequence of the publication is admissible under a declaration averring that plaintiff "suffered the loss in his profession of the confidence of his neighbors, friends, clients, and acquaintances."

2. SAME—EVIDENCE—INJURY TO FEELINGS.
    Testimony as to the effect of the publication on plaintiff's wife is inadmissible to show injury to plaintiff's feelings, when no such claim is set out in the declaration.

3. RETRACTION OF LIBEL—REASONABLE TIME.
    What will amount to a reasonable time under 3 Comp. Laws, § 10425, exempting a publisher from exemplary or punitive damages unless plaintiff shall, before bringing suit, give defendant a reasonable time after demand to publish a retraction, is a question of fact for the jury, unless the circum-

stances leave no room for a difference of opinion upon the subject.

4. REASONABLE TIME—MOTIVE.
   What is a reasonable time, where a question of motive is involved, is a mixed question of law and fact.

5. RETRACTION—CONSTRUCTION OF.
   Whether a retraction published in a paper is full and complete, so as to comply with the provisions of 3 Comp. Laws, § 10425, making the same admissible in evidence on the question of the good faith of defendant and in mitigation of damages, is a question for the court.

Error to Chippewa; Steere, J. Submitted January 31, 1902. (Docket No. 46.) Decided April 8, 1902.

Case by John A. Couch against the Mining Journal Company, Limited, for libel. From a judgment for plaintiff, defendant brings error. Reversed.

*Warner & Sullivan* (*Clark & Pearl*, of counsel), for appellant.

*John P. Conrick* and *M. F. McDonald*, for appellee.

MONTGOMERY, J. The plaintiff, who is an attorney at law residing at Sault Ste. Marie, brings this action of libel against the Mining Journal Company, Limited, publisher of a newspaper at Marquette, based upon two alleged libels, both relating to the same matter. For the purposes of the questions involved, it is unnecessary to set forth these libels at length, and we refrain from doing so. Suffice it to say that we have no doubt that the publication set up in the second count was calculated to bring the plaintiff into disrepute in his character as an attorney, and to hold him up to the ridicule and contempt of his neighbors, and was libelous *per se*, within our former holdings.

On the trial no attempt was made to justify the publication. On the contrary, the evidence introduced shows that on receipt of a request for a retraction, which came to the editor of the Mining Journal at Marquette by mail,

and reached him on Saturday or Sunday, he wrote to Mr. Couch, acknowledging the receipt of his demand for retraction, and stating that he would be in Sault Ste. Marie on the following Thursday; that he in fact did visit Sault Ste. Marie on the following Thursday for the purpose of investigating as to the truth of the statements contained in the libelous article, fully satisfied himself that the article was libelous and did an injustice to Mr. Couch, the plaintiff, and returned to Marquette and published the following retraction:

### "NOT WARRANTED BY THE FACTS.

"The editor of the Mining Journal was at Sault Ste. Marie Thursday to make an investigation into the matter of the publication recently made in this paper connecting John A. Couch and Deputy Sheriff W. F. Lipsett, in a discreditable manner, with an alleged attempt to beat a Minneapolis traveling man named Rickert out of a sum of money. The story was given this paper by Rickert. As it was related by him, an attempt was made to use a justice's court there in an improper manner to force him to give up $50, which was demanded by the justice who issued a warrant for his arrest, by a hackman with whom he had a dispute over the latter's charge for service rendered, and beat him out of the money, and that both Mr. Couch and the deputy sheriff played a prominent part in the scheme.

"His investigation into the matter has convinced the editor of the Mining Journal that Mr. Couch was in no manner concerned in the affair. His office is in the same building with that of the justice who issued the warrant, and across a hall from the justice's room, and he was an onlooker at some of the proceedings. The deputy sheriff, who is a warm friend of Couch's, thought he saw a chance to throw a little business in his friend's way, and rather too zealously sought to persuade Rickert to retain Mr. Couch as his attorney. This evidently caused Rickert to believe that both Couch and Lipsett were leagued with the others against, him and led him to make the misleading statement to this paper which it published.

"The Mining Journal now desires to say that, having convinced itself of the falsity of the statement attributing unworthy motives to Mr. Couch and Mr. Lipsett in con-

nection with this case, through the investigation made as stated, it now fully acquits both of any part in the alleged attempt to beat Rickert out of money. Lipsett acted rather foolishly in the case, but that is the worst that can be said of him. Both he and Mr. Couch stand well at Sault Ste. Marie, and publishing the statement given it by Rickert, charging them with improper conduct in connection with the trouble he brought on himself at Sault Ste. Marie through his wrangle with the hack driver, the Mining Journal did both a wrong, which it cheerfully repairs by publication of this statement."

The principal question that the jury had to deal with on the trial, therefore, was the question of damages. The publication of the libel was admitted, a retraction had been made, and it would follow that the plaintiff was entitled to all actual damages; and whether he was entitled to punitory damages would depend upon whether the publication was malicious, and whether the publication of the retraction was made within a reasonable time after demand, and was full and complete.

It is objected that on the trial plaintiff was permitted to testify as to damages occasioned by reason of loss of business. The declaration averred that the plaintiff "suffered the loss in his profession of the confidence of his neighbors, friends, clients, and acquaintances, and had otherwise been greatly injured, to wit," etc., "to the damage of plaintiff ten thousand dollars." We think this was sufficient to apprise the defendant of a claim for damages for loss to business, and that testimony that his business fell off in consequence of the publication was admissible. See *Weiss* v. *Whittemore*, 28 Mich. 374; *Smedley* v. *Soule*, 125 Mich. 192 ( 84 N. W. 63 ); *Evans* v. *Harries*, 38 Eng. Law & Eq. 347; *Bergmann* v. *Jones*, 94 N. Y. 51.

Plaintiff was permitted to testify, against objection, to the effect that this publication had upon his wife. This testimony was limited, by instruction, to the injury to the plaintiff's feelings by reason of the effect of the libel upon his wife. We think this testimony should not have been

admitted. It was not specially set out in the declaration, and that is a sufficient reason for excluding it in the present case. See *Hatt* v. *Evening News Ass'n*, 94 Mich. 119 (54 N. W. 766). We express no opinion as to whether this testimony would be competent under any circumstances.

The defendant contends that the court also erred in refusing to instruct the jury that no exemplary or punitive damages could be recovered. This contention is based upon 3 Comp. Laws, § 10425, which reads:

"No exemplary or punitive damages shall be recovered unless the plaintiff shall, before bringing suit, give notice, by mail or otherwise, to the defendant, to publish a retraction of the libel, and allow the defendant a reasonable time in which to publish such retraction, and make such amends as are reasonable and possible under the circumstances of the case; and proof of the publication or correction shall be admissible in evidence, under the general issue, on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages: *Provided*, that the retraction shall be published in the same type and in the same editions of the paper as the original libel, and, so far as practicable, in the same position."

The charge of the circuit judge upon this subject was as follows:

"On the part of the defense it is claimed that there was not a reasonable time given to investigate and publish the retraction before the suit was brought, and that is a question of fact for you to determine. It is for you to say whether or not, after the article of February 15th was published, and before suit was brought, the defendant was given a reasonable time in which to investigate and publish a retraction, and make such amends as were reasonable and possible under the circumstances. And it is a question of fact for you whether or not the publication (that is, the retraction, as it is called) was a full and complete retraction, such as made amends as fully as possible."

It is contended that this charge was erroneous in two respects: *First*, it is said that what was a reasonable

time is a question of law; and, *second*, that the court should have construed the retraction, and determined whether or not it was full and complete.

It is not the rule that what is a reasonable time is always a question of law. Where any question of motive is involved, it is a mixed question of law and fact. See *Gridley* v. *Tobacco Co.*, 71 Mich. 528 ( 39 N. W. 754 ); *Michigan State Ins. Co.* v. *Lewis*, 30 Mich. 41. As was said in *Druse* v. *Wheeler*, 26 Mich. 189 :

"The question of reasonable time may sometimes be peculiarly a proper one for the jury. But when the court can clearly see, from the nature of the case, that the time exceeds any possible term required by convenience or necessity, it should so determine, and so instruct the jury."

But upon the other ground we think this instruction was erroneous. It would be difficult to imagine a more complete and absolute retraction than that given in the article quoted above. It was in writing, and was for the court to construe. It should not be left for the jury to find that it did not amount to a full retraction.

For the errors pointed out, the judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.