POLESKI v. POLISH AMERICAN PUBLISHING CO.

1. LIBEL AND SLANDER—EVIDENCE—DAMAGES—VOLUME OF BUSINESS BEFORE AND AFTER LIBEL.
  In action for libel, where plaintiff claimed damages to his business as real estate dealer by reason thereof, he was properly allowed to testify as to volume of his business for six months preceding publication of libel and for same period succeeding publication.

2. SAME—ADMISSIBILITY OF INCOME TAX REPORT.
  While plaintiff's income tax report for year he claims to have suffered loss because of libel was admissible in evidence on question of damages, in action therefor, it did not render incompetent his own testimony as to loss of profits.

3. SAME—DAMAGES—TESTIMONY AS TO PARTICULAR INSTANCE.
  In action for libel, testimony by plaintiff as to conversation with prospective customer who stated he would not have anything to do with plaintiff because of charges appearing in libelous article was admissible in evidence as tending to establish plaintiff's general claim of damage by showing particular instance.

4. SAME—HEARSAY—PROPER TO SHOW EXTENT AND EFFECT OF LIBELOUS ARTICLE.

In action for libel, witnesses were properly permitted to testify as to what other persons had said to them relative to alleged libelous article, because, while such testimony may be said to be of hearsay character, it is nevertheless competent, in actions of this kind, to show extent and effect of publication of libelous article, and it is also competent as tending to sustain plaintiff's allegation of general damage to his reputation, character, and business.

5. SAME—EVIDENCE—CONCLUSION—WITNESS WITH SPECIAL KNOWLEDGE MAY TESTIFY AS TO EFFECT OF LIBEL.

In action for publication of libelous article in Polish newspaper charging plaintiff, who was candidate for public office, with conspiring with members of Ku Klux Klan against Polish people, it was competent for witness, who was shown to have special knowledge on subject, to testify that feeling among rank and file of Polish citizens was very bitter against Ku Klux Klan, giving reasons therefor.

6. SAME—TESTIMONY AS TO CONDITIONS UNDER WHICH LIBEL WAS PUBLISHED ADMISSIBLE.

It is competent and material for plaintiff in action for libel to show conditions under which libelous article was published, especially where such conditions have bearing on extent of injury sustained by him in consequence thereof.

7. SAME—FAILURE TO DEFINE EXEMPLARY DAMAGES—APPEAL AND ERROR—REQUESTS TO CHARGE.

Where, in action for libel, trial court explained to jury that exemplary or punitive damages had to do with "injury to feelings," and defendant made no request for further definition or explanation thereof, its claim of error for court's failure to define said terms is without merit.

8. SAME—INSTRUCTIONS—TRIAL—MALICE—GOOD FAITH NO DEFENSE AGAINST ACTUAL DAMAGES.

In action against publishing company for publishing libelous article, where plaintiff claimed both exemplary and actual damages, defendant was not entitled to instruction that if it acted in good faith it could not be found guilty of malice and verdict should be in its favor, because even if it acted in good faith and without malice it would still be liable for actual damages sustained by plaintiff.

9. SAME—TRIAL—INSTRUCTIONS—PRIVILEGE.

In action against publishing company for publishing article libeling plaintiff, who was candidate for public office, trial court's instruction to jury in respect to privilege and defendant's good faith in publishing it in belief it was for public good, *held*, to fully protect defendant's rights.

10. SAME—DAMAGES—EXCESSIVE VERDICT.

In action for libel, where there is decided conflict. in testimony and wide latitude. in issue submitted to jury, court should not substitute its judgment as to measure of damages for that of jury.

11. SAME—EXCESSIVE VERDICT.

In action against publishing company for libel, where plaintiff claimed that unjustified and vicious attack was made upon him prompted by malicious motive of giving defendant's president advantage over plaintiff in political contest, verdict of $5,000 for property damage, which was well within range of testimony, and $10,000 for injury to feelings may not be said to be so excessive as to require reversal.

Error to Wayne; Gillespie (Glenn C.), J., presiding. Submitted January 6, 1931. (Docket No. 12, Calendar No. 35,281.) Decided April 7, 1931. Rehearing denied June 1, 1931.

Case by John J. Poleski against Polish American Publishing Company, a Michigan corporation, for libel. Judgment for plaintiff. Defendant brings error. Affirmed.

*Arthur A. Koscinski* and *Robert J. Wojcinski,* for plaintiff.

*Colby, Berns & Costello,* for defendant.

NORTH, J.   In his suit for libel plaintiff had verdict and judgment. Defendant reviews by writ of error. In the fall of 1925, plaintiff, a man of Polish ancestry, was a candidate for election to the common council of Detroit. He was a lawyer by profession,

but devoted his energies largely to the real estate business. Many of his friends and constituents were of Polish nationality. Louis F. Wojcik, a banker and president of the defendant publishing company, was also a candidate for election to the common council. The defendant company publishes a newspaper in the Polish language, the Polish Daily News. This Polish paper supported Wojcik, but a rival Polish newspaper—the Daily Record—supported plaintiff. While the political campaign was pending, and on October 26, 1925, defendant published in its newspaper an article antagonistic to plaintiff and by him alleged to have been libelous. Among other charges contained in the article were the following:

"He (Joseph J. Poleski) conspired with the Klan, against his own conscience, against the interests of the Polish public in Detroit. * * * He went merely to get votes, merely to cheat the Polish public. * * * Mr. Poleski betrayed, belied and deceived the citizens of Polish descent in Detroit, * * * (and) conspired against the interests of the Polish public in Detroit. * * * The eyes of the Poles in Detroit now will open, * * * when they see that this alleged Polish progressive * * * sold himself, cheated the Polish public, bargained for himself with the votes of Polish citizens. * * * Mr. Poleski does not belong to any parish, * * * he ridicules the priests and the faith, * * * he laughs at those ideals that are sacred to the parishioners. * * * But since Mr. Poleski lies that he belongs to St. Thomas parish, or to the St. Stanislaus parish—although he does not belong to any of them—but only to gain for himself the parish votes, it is our duty to unmask such a person. * * * However, the Polish people will open its eyes today and convince itself that it has to do with an ordinary political swindler, with an ordinary liar, who pulls

the wool over the eyes of the people, that he belongs to a parish, that he wars with the Klansmen, yet (in the) meantime he goes hand in hand with the Klansmen, and does not belong to any parish. How does such a candidate present himself? Let the Polish public know now with whom it has to do!''

Plaintiff alleges he was thus maliciously libeled by defendant, and that in consequence thereof he has ''been and is greatly injured in his good fame and credit and brought into public scandal, infamy and disgrace;'' and has been ''deprived of great gains and profits in his said profession and occupation as a real estate broker, * * * and also thereby suffered great mental pain, anguish and mortification.'' Plaintiff contends this alleged libelous publication was prompted by malice and bad faith, that defendant sought by thus maligning plaintiff to advance the rival candidacy of the president of the defendant company. On the other hand, defendant asserts it acted in good faith in discharging its public duty in attempting to give publicity to the qualifications or fitness of plaintiff as a candidate for public office, that such publication was qualifiedly privileged, and, since defendant acted without malice in the reasonable belief that its publication was true, it is not liable.

The verdict was for $5,000 property damages and $10,000 for injury to feelings. Appellant asserts that the court erred in permitting plaintiff to testify concerning his loss of profits from the sale of real estate which he owned individually. Plaintiff was connected with a copartnership and a corporation engaged in real estate business; but in the trial of this case the court excluded all testimony tending to establish loss or damage except such as was incident to plaintiff's individual property or business

affairs. As indicative of such loss, plaintiff was al-
lowed to testify over defendant's objection as to the
volume of his business for six months next preced-
ing this publication and the volume of his business
for a like period next following the publication. His
testimony indicates that individually he dealt ex-
tensively in real estate transactions, and he testified
that by reason of diminution of business the six
months following the publication he lost $15,000. On
cross-examination he testified that all of this prop-
erty was sold within the following year. Defendant
asserts this practically nullifies his claim of loss; but
plaintiff testified in that connection "I could have
sold them and then some, had I been able to." De-
fendant also stresses the fact that plaintiff's income
tax report for 1925 contradicts his present claim
concerning the amount of profits he derived from
his real estate activities. These and other matters
of like character were proper items of proof on di-
rect and cross-examination, but they do not render
incompetent plaintiff's own testimony as to his loss
of profits.

Appellant also asserts error on the part of the
court in allowing plaintiff to testify to a conversa-
tion with one Lipinsky whom plaintiff approached
relative to the sale of property, and thereupon Lip-
insky stated that he did not like the position plain-
tiff took politically, saying "You were associated
with the Ku Klux Klan. I won't have anything to
do with you." Appellant contends that this testi-
mony tended to establish special damages and that
such special damages were not alleged. We do not
so understand. This testimony tended to establish
plaintiff's general claim of damage by showing a
particular instance. Had plaintiff sought to show

the loss of a particular sale to Lipinsky and a specific profit, appellant's objection would be well taken.

Appellant also urges that the court erred in permitting witness Joseph Karasiewicz and other witnesses to answer over defendant's objection questions concerning what other people had said to them relative to the alleged libelous article. While such testimony may be said to be of a hearsay character, nonetheless in actions of this kind it is competent to show the extent and effect of the publication of the alleged libelous article. Such testimony was competent as tending to sustain plaintiff's allegation of general damage to his reputation, character, and business. *Cyrowski* v. *Polish-American Publishing Co.*, 196 Mich. 648.

Joseph Karasiewicz had previously been the editor-in-chief of defendant's paper and likewise of another Detroit Polish daily. He was living in or near Detroit at the time the article here in suit was published. As a witness for plaintiff he testified that through his activity he had come to know "thousands of Polish people," and, concerning their attitude towards the Ku Klux Klan, he testified:

"The feeling among the rank and file of the Polish citizens, especially, was very bitter against the Ku Klux Klan, because they were under the impression that the Ku Klux Klan wants to drive them away from this country, deny them the right of having parochial schools, and trying to force them to support 100 per cent. Americanism, which is used by the Ku Klux Klan as the cloak of their intolerance."

Appellant claims this testimony was highly incompetent "because it calls for a conclusion on the part of the witness, as to what the feeling of the rank and file of the Polish citizenry was." Appellant asserts

this witness was no more qualified or capable of giving testimony of this character than the jurors. Appellant's position in this regard is not well founded. There was ample testimony of special knowledge possessed by this witness. It was both competent and material for plaintiff to show the conditions under which the libelous article was published; especially if, as is here claimed, such conditions had a bearing upon the extent of the injury sustained by plaintiff in consequence thereof. *Line v. Spies,* 139 Mich. 484; *Bolton v. Walker,* 197 Mich. 699 (Ann. Cas. 1918 E, 1007).

Appellant complains of the trial court's failure to define in his charge to the jury the terms exemplary and punitive damages, and also of the court's failure to charge that if the defendant in publishing this article acted in good faith it could not be found guilty of malice, and in that event the verdict should be one of no cause of action. In the course of his charge the trial court did intimate to the jury that exemplary or punitive damages had to do with "injury to feelings." Defendant made no request for a further definition or explanation of these terms, and its claim of error in that particular is without merit. *Halloran's National Detective Agency v. Weiden,* 238 Mich. 242. Defendant's request to charge that in case defendant acted in good faith it could not be found guilty of malice and the verdict would therefore be in favor of the defendant, is not sound as a proposition of law. Lack of malice would foreclose plaintiff's right to recover punitive or exemplary damages, but he would still be entitled to damages actually sustained, if any, incident to his business. *Clair v. Battle Creek Journal Co.,* 168 Mich. 467. The case was fairly and plainly submitted to the jury on defendant's claim that in pub-

lishing this article it was protected by a qualified privilege. The court charged the jury:

"If it appears that criticism is just and proper and was made in good faith, without malice and for the public good, for the purpose, as supposed by the person at the time, to prevent an incompetent and unfit person from receiving a majority of the votes of the electors, the article is *prima facie* privileged, and the law requires the party who complains to show that it was published with bad motives and not for good ends and purposes. * * *

"Where, as in this case, the publication is qualifiedly privileged, it is not actionable unless made in bad faith or with actual malice or without reasonable cause to believe it to be true. * * * If you should find for the plaintiff, damages for libel upon a candidate for public office are reduced to a minimum if the libel resulted from an honest mistake made or an honest effort to enlighten the public as to his character; and if you find from the facts in this case that the defendant published the alleged libel through an honest mistake made, or an honest effort to enlighten the public as to the character of the plaintiff when he was a candidate for councilman for the city of Detroit, then your damages which the plaintiff is entitled to recover are reduced to a minimum."

We think this and other similar statements in the charge of the court fully protected defendant's rights. Complaint is made that the damages awarded are excessive. In cases where there is decided conflict in testimony and wide latitude in the issues submitted to the jury, courts should not substitute their judgment as to the measure of damages for that of the jury. If plaintiff's contention in this case is true, a most unjustified and vicious attack was made upon him and prompted by the malicious

motive of giving defendant's president an advantage over plaintiff in a political contest. Plaintiff immediately demanded retraction, and this demand reached defendant October 28th. Notwithstanding defendant was publishing a daily paper it made no retraction until its afternoon edition on the day before the election, which was held November 3d. The retraction was tardily made, but the court charged the jury that it should be considered in mitigation of damages. Defendant was permitted to show all the circumstances under which the article was published. Its attempt at justification was not at all convincing. The amount awarded as damages to property or business was well within the range of plaintiff's testimony. Under the facts disclosed by this record we would not be justified in setting aside the jury's verdict as to either actual or exemplary damages. In a libel case, we have said:

"The court, on appeal, will not set aside a verdict on the ground that it was excessive unless satisfied that the result was reached as a consequence of gross error, passion, bias, or corruption." *Clair* v. *Battle Creek Journal Co., supra* (syllabus).

We have given consideration to the other assignments of error and find them without merit. They are not prejudicial or such as to justify reversal. The case was carefully tried and submitted to the jury under a full and impartial charge. The judgment rendered is affirmed, with costs to appellee.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, Sharpe, and Fead, JJ., concurred.