MICHIGAN MICROTECH, INC v FEDERATED PUBLICATIONS, INC

Docket No. 109934. Submitted July 18, 1990, at Lansing. Decided January 22, 1991, at 10:05 A.M. Leave to appeal sought.

Michigan Microtech, Inc., brought an action for defamation in the Ingham Circuit Court against Federated Publications, Inc., doing business as the Lansing State Journal, alleging damages as a result of a decrease in sales of satellite dishes following an article in the paper that incorrectly stated that the plaintiff intended to discontinue the sale of satellite dishes because of problems associated with the scrambling of satellite signals. The court, James T. Kallman, J., entered judgment following a jury verdict for the plaintiff and denied the defendant's motion for a judgment notwithstanding the verdict or for a new trial. The defendant appealed, asserting error in the trial court's instruction of the jury, in its failure to direct a verdict, and in its admission of evidence of damages, and from the failure of the plaintiff to prove damages, actual malice, or malpractice. The plaintiff cross appealed.

The Court of Appeals *held:*

The trial court properly denied the defendant's motions for summary disposition, a directed verdict or judgment notwithstanding the verdict and a new trial. The finding of liability against the defendant and award damages for the plaintiff was proper.

1. The trial court properly denied the defendant's motion for summary disposition. An action for defamation exists where there is a nonprivileged publication of a false statement concerning a corporation which adversely affects the business of the corporation and deters the public from dealing with it. The intent in making the false statement is not an element of defamation. The statement involved in this case had the potential of adversely affecting the plaintiff's business reputation and its ability to sell satellite dishes.

2. The plaintiff was not required to prove actual malice. Even

REFERENCES

Am Jur 2d, Libel and Slander §§ 315, 360, 481.

See the Index to Annotations under Corporations; Libel and Slander; Malpractice; Newspapers and Periodicals.

if the actual malice standard were held to be applicable where the danger to reputation is not apparent from the statement, the danger to reputation and resulting loss of sales in this case was apparent. Further, the defendant failed to establish a basis for holding that the plaintiff was a limited-purpose public figure, there being no proofs showing any substantial attempt by the plaintiff to inject itself into a matter of public controversy.

3. An action for malpractice only may be brought against a member of a state-licensed profession. Because journalism is not a state-licensed profession, the applicable standard of care is that of a reasonably careful journalist.

4. The trial court properly denied the defendant's motion for a directed verdict or judgment notwithstanding the verdict. The jury could properly find that the reporter's failure to make further inquiry regarding or to seek corroboration of statements made by an unidentified source was a negligent breach of the applicable standard of care.

5. The trial court's instruction to the jury that expert testimony was not necessary to find that the defendant had been negligent was proper in view of defense counsel's closing argument suggesting that expert testimony was required.

6. The plaintiff's proofs that the Lansing area store had suffered a decline in sales and profits following the publication of the article by the defendant were sufficient to establish damages. The plaintiff was not required to find and present some person who had read the article and, as a result, was deterred from dealing with the plaintiff.

7. The trial court properly permitted testimony regarding sales at the plaintiff's store in another area to show the effect of the article on sales at the Lansing area store and testimony regarding the effect of the false statement in the article on the sales strategies of the plaintiff's competitors.

8. The trial court's instructions to the jury regarding damages clearly required the jury to find damage to reputation as a prerequisite to an award of damages and to base any award of damages on the evidence and not on speculation, guess, or conjecture. Any error with respect to the instruction concerning good will was harmless.

Affirmed.

1. LIBEL AND SLANDER — CORPORATIONS — DEFAMATION — PUBLICATIONS.

An action for defamation exists where there is a nonprivileged publication of a false statement concerning a corporation which

adversely affects the business of the corporation and deters the public from dealing with it.

2. Libel and Slander — Journalists — Malpractice — Standard of Care.

Malpractice is a statutorily prescribed action which may be brought only against persons engaged in state-licensed professions; because journalism is not a state-licensed profession, the standard of care applicable to newspapers is one of reasonable care (MCL 600.2912; MSA 27A.2912).

3. Libel and Slander — Damages to Reputation — Lost Sales.

Proof by a retailer of the dollar value of lost sales following publication of an allegedly defamatory statement is sufficient to establish both the requisite damage to the reputation of the retailer and the damages resulting from the defamation.

4. Libel and Slander — Damages — Lost Sales — Sufficiency of Proofs.

The damages resulting from lost sales because of the publishing of a defamatory article by a newspaper may be proved by a comparison of the dollar value of sales before publication with that of sales following publication; it is unnecessary to offer evidence of persons who were deterred from making purchases because of the article.

*Smith, Johnson, Brandt & Heintz, P.C.* (by *Barbara A. Assendelft* and *Patrick E. Heintz*), for the plaintiff.

*Foster, Swift Collins & Smith, P.C.* (by *Webb A. Smith* and *Charles E. Barbieri*), for the defendant.

Before: Marilyn Kelly, P.J., and Hood and Doctoroff, JJ.

Marilyn Kelly, P.J. This is a defamation case in which a jury found liability against defendant, Lansing State Journal, and awarded damages to plaintiff, Michigan Microtech, Inc.

Defendant appeals as of right, claiming plaintiff failed to prove its newspaper article was defamatory. It alleges plaintiff was obliged and failed to show either actual malice or malpractice. Defen-

dant claims that the trial court erred by refusing to direct a verdict in its favor and in refusing to give the jury its instructions on ordinary negligence. Defendant raises issues, also, as to whether plaintiff proved its damages and whether the court admitted evidence of damages without foundation. Defendant claims the court erred in instructing the jury regarding damages to reputation and for lost profits and good will. We affirm.

On January 18, 1986, defendant published an article describing how the scrambling of satellite signals was having an adverse effect on the sale of satellite dishes. In preparation for the article, defendant's news reporter William Sinnott conducted a telephone survey of local satellite dish dealers to determine if scrambling injured their business.

Sinnott telephoned plaintiff's Lansing area store in Mason. A woman answered with plaintiff's name. When questioned, she told Sinnott that Michigan Microtech was discontinuing the sale of satellite dishes because of "headaches" and poor profits due to scrambling. According to her, Microtech would simply continue to provide service for the dishes they had sold.

The woman refused to identify herself, saying, "You know why." Sinnott testified that he was unsure what she meant, but that it was not unusual for people to refuse to identify themselves when answering telephone surveys. In the belief that his standards of identification, credibility, and hostility had been met, he included the information in his article without further verification. Sinnott testified that he did not follow the Washington Post Standards and Ethics for publishing without attribution, because he used them only when the source needed to be protected.

Michigan Microtech claimed to be the oldest and

largest satellite antenna service in Michigan. In anticipation of scrambling, it had obtained a supply of descramblers and had developed an advertising campaign to market them. It had no plans to discontinue selling satellite dishes. Plaintiff's vice president, Bernard Schafer, testified that he investigated and could identify no Mason store employee who had spoken with Sinnott. Defendant published a correction six days later and a follow-up article several weeks later, quoting Schafer regarding the scrambling issue.

At the close of trial, the jury awarded $54,258 to plaintiff as damages for lost profits.

On appeal, defendant first contends that the court erred in denying its motion for summary disposition. It claims there was no defamation as a matter of law, because a corporation's reputation can be defamed only by aspersions about its honesty, credit, efficiency or other business character.

In order to establish liability for defamation, a plaintiff must prove: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157, 173-174; 398 NW2d 245 (1986).

A defamatory publication tends to harm the reputation of another by lowering that person's estimation within the community or by deterring third persons from associating or dealing with him. *Nuyen v Slater,* 372 Mich 654, 662; 127 NW2d 369 (1964); *Heritage Optical Center, Inc v Levine,* 137 Mich App 793, 797; 359 NW2d 210 (1984). A corporation does not have a reputation in

a personal sense; however, it does have a business reputation that can be defamed.

This Court has recognized that an action exists for defamation of a corporation, as described in 3 Restatement Torts, 2d, § 561, p 159:

> One who publishes defamatory matter concerning a corporation is subject to liability to it
>
> (a) if the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it, or
>
> (b) if, although not for profit, it depends upon financial support from the public, and the matter tends to interfere with its activities by prejudicing it in public estimation. [*Heritage Optical,* 797-798.]

The defendant in *Heritage Optical* telephoned the plaintiff's clients and told them that the plaintiff had closed or moved its office and was unable to furnish goods and services. This Court found defamation, because the statement adversely affected the plaintiff's business reputation and its ability to conduct business.

The statement complained of in this case, that plaintiff had discontinued selling satellite dishes, is similar to the statement in *Heritage Optical.* It had the potential of adversely affecting Microtech's business reputation and its ability to sell satellite dishes. Defendant argues that *Heritage Optical* is distinguishable, because there the defendant intended to harm the plaintiff. However, intent is not an element of defamation. The trial court did not err in denying defendant's motion.

Next, defendant argues that plaintiff failed to prove actual malice, because Microtech was a limited-purpose public figure, and the statements did not warn of any defamatory potential. Defendant points out that the record does not support a finding of actual malice.

The Michigan Supreme Court reexamined Michigan's libel law in light of the United States Supreme Court's decision in *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974). It ruled that, in the absence of malice, a publication about a public official or public figure is constitutionally privileged from liability for defamation. *Rouch,* 200. Where the publication involves a private figure, the privilege does not exist, and the negligence standard of *Gertz* applies. *Rouch,* 202. In addition to proving that the defendant was negligent, the private plaintiff must prove that the objectionable statement was false. *Rouch* does not discuss whether the statement must warn of its defamatory potential.

The Virginia Supreme Court has relied on the *Gertz* opinion. It held that an actual-malice standard applies if the statement itself does not make it apparent that it presents a substantial danger to reputation. The trial court must determine whether a reasonable and prudent editor should have anticipated that the statement contained an imputation necessarily harmful to reputation. *Gazette, Inc v Harris,* 229 Va 1, 22-23; 325 SE2d 713 (1985), cert den sub nom *Fleming v Moore,* 472 US 1032 (1985), sub nom *Port Packet Corp v Lewis,* 473 US 905 (1985).

Defendant urges us to adopt the Virginia rule. We decline to address this issue, since here the defamatory potential of the statement was obvious. The article indicates that the sale of satellite dishes was plaintiff's main business. Thus, clearly, the statement that plaintiff planned to no longer sell dishes could substantially damage its sales reputation and deter third parties from dealing with it.

Defendant also argues that plaintiff is a limited-purpose public figure.

A private person becomes a limited-purpose public figure when he voluntarily injects himself or is drawn into a particular public controversy and assumes a special prominence in its resolution. However, a private individual is not automatically transformed into a limited-purpose public figure merely by becoming involved in or associated with a matter that attracts public attention. The court must look to the nature and extent of the individual's participation in the controversy. *Hodgins v Times Herald Co,* 169 Mich App 245, 256-257; 425 NW2d 522 (1988).

Defendant asserts that plaintiff assumed a role of special prominence in the scrambling issue through its political involvement and its marketing strategy and advertising of descramblers. Plaintiff advertised that it sold descramblers. One of its employees took part in a trade organization that lobbied for legislation to place a two-year moratorium on scrambling. However, this level of activity is minimal when compared with the activity involved in the cases cited by defendant. See *National Foundation for Cancer Research, Inc v Council of Better Business Bureaus, Inc,* 705 F2d 98 (CA 4, 1983), cert den 464 US 830 (1983); *Steaks Unlimited, Inc v Deaner,* 623 F2d 264 (CA 3, 1980); *Foodscience Corp v McGraw-Hill, Inc,* 592 F Supp 362 (D Vt, 1984).

Microtech did not thrust itself into the issue. It was contacted at random by defendant. The evidence does not support a finding that it was a limited-purpose public figure. Therefore, proof of actual malice was not required.

Next, defendant contends that plaintiff should have been required to prove professional negligence or malpractice. It argues that Michigan's malpractice statute applies to nonlicensed professionals, such as newspaper reporters.

The malpractice statute provides that anyone who professes membership in a state-licensed profession is bound by the common law applicable to malpractice actions against licensed members of that profession. MCL 600.2912; MSA 27A.2912. Nowhere does the statute mandate a professional negligence standard of care for journalists, a profession not even licensed by the state. Moreover, the Legislature did not intend that every member of a state-licensed profession necessarily be subject to malpractice. *Dennis v Robbins Funeral Home,* 428 Mich 698, 704; 411 NW2d 156 (1987).

In two of the cases cited by defendant, the standard of care is that of a "reasonably careful publisher" or "ordinarily prudent person engaged in the same kind of business." *Gobin v Globe Publishing Co,* 216 Kan 223, 233; 531 P2d 76 (1975); *Martin v Griffin Television Co, Inc,* 549 P2d 85, 92 (Okla, 1976). The standard used in this case was that of a "reasonably careful journalist." We find no error. The Michigan malpractice statute does not apply to newspaper reporters.

Defendant argues that the trial court erred in denying its motion for a directed verdict and judgment notwithstanding the verdict. It claims there was no negligence, because the statement did not hint of defamatory potential.

When deciding a motion for a directed verdict or judgment notwithstanding the verdict, the trial court must review the testimony in the light most favorable to the nonmoving party. *Lester N Turner, PC v Eyde,* 182 Mich App 396, 398; 451 NW2d 644 (1990). A judgment notwithstanding the verdict is proper where insufficient evidence is presented to create an issue for the jury. It is improper where reasonable minds could differ on issues of fact. We will not disturb the trial court's decision, unless there has been a clear abuse of

discretion. *Wilson v General Motors Corp,* 183 Mich App 21, 36; 454 NW2d 405 (1990).

In this case, there was sufficient evidence of defendant's negligence for the case to go to the jury. Sinnott did not inquire further or seek corroboration when the woman he interviewed refused to identify herself. He acknowledged that the Washington Post Standards and Ethics stated that before any information is accepted without full attribution the reporter must (1) make every reasonable effort to get it on the record, (2) seek the information elsewhere, or (3) request and publish the reason for restricting the source's identity. Defendant's editor did not have specific guidelines for her reporters to use when conducting telephone surveys. She acknowledged that there could be instances in which further corroboration is necessary, as where sources refuse to identify themselves.

Defendant also argues that a new trial was necessary, because the trial court instructed the jurors that expert testimony was not required to establish defendant's negligence. It argues that this was an unfair comment on the weight of the evidence. The instruction was prompted by the defendant's closing argument, during which counsel pointed out that plaintiff had failed to offer an expert in the area of journalism standards. We find no error requiring reversal. MCR 2.613(A); *Callesen v Grand Trunk W R Co,* 175 Mich App 252, 263; 437 NW2d 372 (1989).

Defendant asserts that plaintiff failed to prove damages. It contends that proof of damage to reputation is required and was not shown.

Presumed damages are recoverable where malice is shown. Otherwise, actual damages must be proven. *Gertz,* 349. Special damages, a part of actual damages, are losses having economic or

pecuniary value. Smolla, Defamation, §§ 7.02[1], 9.06[1], pp 7-2, 7-3, 9-10.

Plaintiff presented testimony that sales slumped after publication of the objectionable article. Proofs showed the dollar value of plaintiff's lost sales. Defamation of a corporation results in lack of association by third parties. Thus, plaintiff's proofs showed damage to reputation at the same time they established dollar loss.

As to the sufficiency of proofs, plaintiff did not produce the names of individuals who were deterred from buying satellite dishes because of the article. Rather, it relied on a comparison of sales before and after the article appeared. This has been held to be competent evidence of lost profits. See *Poleski v Polish American Publishing Co,* 254 Mich 15, 19-20; 235 NW 841 (1931); *Couch v Mining Journal Co,* 130 Mich 294, 297; 89 NW 936 (1902); *McDuff v Detroit Evening Journal Co,* 84 Mich 1, 5; 47 NW 671 (1890); *Weiss v Whittemore,* 28 Mich 366, 373-374 (1873). It would be an unreasonable burden to mandate that plaintiff produce the names of people who did not contact it because of the article. That would force plaintiff to resort to far-fetched methods of discovery, such as contacting numerous competitors, many of whom might be reluctant to divulge the names of their customers.

The proofs which plaintiff provided in this case were sufficient to establish a loss of profits. Reasonable minds could deduce from them that plaintiff suffered the loss claimed. The trial court did not abuse its discretion by denying defendant's motions for a directed verdict and judgment notwithstanding the verdict.

Defendant maintains that it was denied a fair trial because of the admission of certain evidence. The decision whether to admit evidence is within

the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Kochoian v Allstate Ins Co,* 168 Mich App 1, 12; 423 NW2d 913 (1988).

Defendant claims that the admission of a list of people who called to inquire if defendant's article was accurate was hearsay. In the normal course of business, plaintiff kept a log of incoming calls. Thus the list could be considered a business record. MRE 803(6). Even if it were not and the admission were error, it was harmless error, since defendant discredited the evidence.

Plaintiff presented evidence through Schafer comparing the sales levels in its Lansing and Mt. Pleasant stores before and after publication of the article. Defendant claims that only an expert can compare market areas. It cites no authority for the proposition. We find that the jury properly could be asked to assess the difference in sales. Moreover, the court did not abuse its discretion in admitting evidence regarding actual lost profits based on the change in sales levels and the accountant's testimony relying on those figures. Plaintiff had operated for several years in Mt. Pleasant and for over a year in Lansing. An adequate sales record existed. We find no error.

Schafer gave testimony regarding his competitors' opportunity to use the article against Microtech. It was founded on his personal experience and supported plaintiff's evidence of lost profits. Also, Robert Peltier gave testimony regarding the impact of the article on Michigan Microtech. This was an opinion based on the perception of the witness. MRE 701. Peltier managed the same type of business as plaintiff in the same area. Peltier's testimony regarding his salesperson's conduct was not hearsay but rather a description of an event of which he had personal knowledge. Finally, the

qualification of Henry Block as an expert was not an abuse of discretion. He had been marketing satellite dishes since the early 1980s and had college training in business administration.

Lastly, defendant argues that the court made several errors in its instructions regarding damages. Defendant claims the court failed to instruct that damage to reputation must be shown as a prerequisite to other damages. However, as discussed previously, loss of reputation and loss of profits are intertwined. The loss of both is shown by a diminished number of customers. The necessity of making these findings was adequately covered by the special verdict form.

Defendant asserts that the court should have instructed that lost profits must be demonstrated with reasonable certainty. The court instructed the jurors that damages must be based on the evidence and not on speculation, guess or conjecture. This instruction was in accordance with SJI2d 50.01 and was adequate. *Ritchie v Michigan Consolidated Gas Co,* 163 Mich App 358, 371; 413 NW2d 796 (1987).

Finally, the error, if any, regarding the alleged separation of good will and reputation was harmless. The jury awarded plaintiff the exact amount it claimed for lost profits and apparently did not make a separate award for either loss of good will or loss of reputation.

Affirmed.