# STATE OF MICHIGAN

# COURT OF APPEALS

SYED ALI,

        Plaintiff-Appellee,

v

SYED AHMED, NASAH, INC., and MARS, INC.,

        Defendants-Appellants,

and

DAVE MILLER, PAM DAITZ, DAN ROMAN, and JTH TAX, INC.,

        Defendants.

UNPUBLISHED
May 15, 2018

No. 335983
Wayne Circuit Court
LC No. 12-017031-CZ

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

      In this action involving breach of a settlement agreement, defendants Syed Ahmed (Ahmed), Nasah, Inc., and Mars, Inc. appeal as of right an order of the circuit court, following a jury trial, entering judgment in favor of plaintiff in the amount of $119,500 plus interest. The trial court denied defendants' motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, remittitur. We affirm.

## I. BACKGROUND

      Syed Safdar Ali managed six Liberty Tax Service franchises owned by Syed Ahmed and his companies (the collective defendants) in the Detroit area. Ali resigned during the off-season of 2011, citing Ahmed's failure to honor oral profit-sharing promises. Ali ostensibly planned to work for another Liberty Tax Service franchise, but may have been involved with a competing company. Ahmed sued Ali, and the parties quickly settled. Pertinent to this appeal, the settlement agreement provided that Ali would manage defendants' six Liberty Tax franchises for the 2012 tax season, that defendants would pay Ali a salary for his work, that defendants would then sell Ali three of the franchises for $100,000 each, and that the profits from the 2012 tax

-1-

season would be divided after a deduction for salaries.[1] The parties subsequently entered a purchase and sale agreement (PSA) for the three franchises. However, Liberty Tax would not approve the sale.

When defendants failed to honor the settlement agreement, Ali sued. The trial court summarily dismissed the action, concluding that the PSA superseded the settlement agreement and governed the dispute, but that the PSA was null and void as a condition precedent in the PSA—that the franchisor approve the agreement—was not satisfied. This Court reversed, concluding:

> To the extent that any terms in the settlement agreement regarding the purchase and sale of the Liberty Tax franchises are inconsistent with the terms of the [PSA], those terms are rescinded by the subsequent [PSA]. . . . However, the [PSA] does not contain any terms related to the share of the profits [Ali] and Ahmed were to receive for the 2012 tax year. . . . Therefore, the settlement agreement's term that [Ali] was to receive 35% of the profit for the 2012 tax season was not inconsistent with any term in the [PSA]. Accordingly, the terms regarding the division of profits for the 2012 tax year were not rescinded by the subsequent [PSA] and the trial court erred in concluding that they were. . . .
>
> Additionally, the integration clause in the [PSA] does not indicate that the parties intended for the [PSA] to abrograte [sic] or totally supersede the terms of the original settlement agreement. . . .
>
> * * *
>
> [T]he integration clause does not evidence an intent to abrogate *all* of the terms in the settlement agreement, only those terms related to the purchase and sale of the Liberty Tax franchises. [*Ali v Ahmed*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2016 (Docket No. 324616), p 4.]

On remand from this Court, the case proceeded to trial on the remaining aspects of the breach of settlement agreement claim. Defendants argue on appeal that at trial, Ali did not demonstrate the amount of damages with certainty, and that the jury's award of $119,500 was excessive. Accordingly, defendants argue that the trial court erred in denying their motion for a directed verdict, as well as their motion for a judgement notwithstanding the verdict (JNOV), or in the alternative, remittitur.

## II. LEGAL STANDARDS

We review de novo a trial court's denial of directed verdict or JNOV. *Prime Fin Servs, LLC v Vinton*, 279 Mich App 245, 255; 761 NW2d 694 (2008); *Smith v Foerster-Bolser Const,*

---

[1] The settlement agreement provided that Ahmed would get 50% of the profits, Ali 35%, and Ali's brother, Syed Azfar Ali, 15%. Syed Azfar Ali assigned his profit share to Ali.

*Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). We review for an abuse of discretion a trial court's denial of remittitur. *Clemens v Lesnek*, 200 Mich App 456, 464; 505 NW2d 283 (1993). A court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

"When deciding a motion for a directed verdict or [JNOV], the trial court must review the testimony in the light most favorable to the nonmoving party." *Mich Microtech, Inc v Federated Publications, Inc*, 187 Mich App 178, 186; 466 NW2d 717 (1991). In considering a motion for a directed verdict, the court considers "all legitimate inferences that may be drawn from the evidence in a light most favorable to the nonmoving party to determine if a prima facie case was established." *Dep't of Transp v McNabb*, 204 Mich App 674, 675-676; 516 NW2d 83 (1994). This standard also applies to JNOV motions. See *Byrne v Schneider's Iron & Metal, Inc*, 190 Mich App 176, 178-179; 475 NW2d 854 (1991). "A directed verdict is appropriate only when no factual question exists on which reasonable jurors could differ." *Smith*, 269 Mich App at 427-428. Because a trial court "may not substitute its judgment for that of the jury," a motion for a directed verdict must be denied where jurors "could honestly have reached different conclusions." *Dep't of Transp*, 204 Mich App at 675-676. "A [JNOV] is proper where insufficient evidence is presented to create an issue for the jury," and is "improper where reasonable minds could differ on issues of fact." *Mich Microtech*, 187 Mich App at 186.

### III. ANALYSIS

Defendants do not dispute the jury's determination that they breached the settlement agreement. Rather, they argue that the damages were so uncertain and speculative that the jury could not have ascertained their proper amount. "The measure of damages in relation to a breach of contract is the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014) (quotation marks and citation omitted). Here, the compensable damages sustained by Ali were his share of the profits for the 2012 tax season from the tax preparation centers that he managed for defendants. The agreement specified that the amount due was for profits generated through May 30, 2012. However, the parties never agreed on the amount of profit.

"[U]ncertainty as to *the fact* of the amount of damage caused by the breach of contract is fatal" to a claim, but "some uncertainty as to the amount of damages is allowable." *Home Ins Co v Commercial & Indus Sec Servs, Inc*, 57 Mich App 143, 147; 225 NW2d 716 (1974) (emphasis added). Here, the fact that contract damages were 50% of the net profit for the 2012 tax season through May 30 is not disputed. However, defendants argue that the amount of those damages was not proved with reasonable certainty. "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Doe*, 308 Mich App at 601-602 (quotation marks and citation omitted). Conversely, "damages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies." *Id*. at 602 (quotation marks and citation omitted).

Defendants argue that Ali did not prove the 2012 net profit amount with reasonable certainty as evidenced by his closing argument that the profits could have ranged from $400,000 to $750,000. Specifically, Ali's counsel invited the jury to consult the 2012 tax return, but advised that a precise number would be difficult to ascertain due to "the way [Ahmed] runs his company," transferring funds back and forth between Nasah and Mars. Counsel noted that Nasah's tax return showed an end-of-year profit of $91,000. The net profit figure would have been much higher as of May 30, however, as Ahmed removed $440,000 from the company's bank account. Counsel continued that Nasah's bank statements revealed a $328,000 balance on June 1, but only $90,000 by the end of the year. Counsel suggested that Nasah profits as of May 30 were the $440,000 transferred to a different account plus the $328,000 that remained in the account, to which the salaries received by Ahmed, Ali, and Syed Azfar Ali ($180,000 in all) could be added. Accordingly, Ali's attorney posited to the jury, profits could range from $400,000 to $750,000 based on the account balances, and up to $930,000 when the salaries were included. However, the arguments of Ali's counsel are not evidence and the court instructed the jury in this regard.

Further supporting their claim, defendants assert, is Ali's failure to present any "evidence, let alone competent evidence, of any purported damages." Defendants take issue with Ali's failure to present an expert witness to analyze the tax returns and bank statements and formulate an opinion on defendants' net profit. However, the tax returns and bank statements were competent evidence. Moreover, Ali and Ahmed, who were both intimately familiar with the running of the business, both testified regarding the documents and other financial aspects of the tax preparation franchises. And where "*the fact* of damages has been established and the only question to be decided is the amount, the certainty requirement is relaxed." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 551; 904 NW2d 192 (2017).

Ali presented into evidence the 2012 tax return for Nasah, which reported $945,044 in revenue, $387,000 in costs, and a profit of $91,943. Ali testified that he and Ahmed were each supposed to get a $10,000 monthly salary and then split the net profits according to the agreement, but that Ahmed transferred close to $500,000 of the profits out of the account. Ahmed testified that a bank statement from March 31 to April 30, 2012 showed that he made $10,000 transfers from a Nasah account to a Mars savings account on consecutive days, April 6 and 7, similar transfers of $2,500 and $3,000 on April 16, $1,000 on an unspecified date, and $400,000 from Nasah to a Mars savings account on April 5, thereby keeping all these funds in the business. The June 2012 bank statement was also admitted into evidence. Ahmed described that his Mars 2012 tax return showed gross receipts of $148,312, and gross income of negative $14,900. Ahmed attested that, in 2012, he paid Syed Azfar Ali $10,500, and that Ali's W-2 reported that Ahmed paid him $19,500 in salary. From this testimonial and documentary evidence, the jury could calculate defendants' net profits for the 2012 tax season through the end of May.

Even so, defendants insist that the jury could not precisely determine the amount of damages based on the general information provided in the tax returns and bank statements without a detailed accounting of the profit. The tax return forms include revenue, expenses, and deductions for the entire year, defendants emphasize, whereas the settlement agreement only provides for the division of net profits through May 30, 2012. As a tax preparation business, defendants' revenue was primarily generated through April, while its expenses continued for the

entire year. The bank statements from April and June, and the testimony of Ahmed regarding his transfers of funds from the Nasah account that was supported by the account statements, were additional evidence to assist the jury in calculating the amount of profit through May 2012.

In *Attard v Citizens Ins Co of Am*, 237 Mich App 311, 321-322; 602 NW2d 633 (1999), quoting *Scott v Boyne City, G & A R Co*, 169 Mich 265, 272; 135 NW 110 (1912), the Court stated that " 'a case should not be submitted to the jury where a verdict must rest upon conjecture or guess.' " Here, the trial court did not err in denying defendants' motion for a directed verdict. The jury was able to evaluate the tax returns and bank statements, as well as the parties' testimony to calculate profits earned through May 30, 2012 with reasonable certainty.

The court also did not err in denying JNOV. "[A] trial court should grant a party's motion for JNOV with respect to certain damages if the jury was permitted to speculate concerning the amount of those damages." *Attard*, 237 Mich App at 321. Here, the jury did not have to speculate about the amount of profit, again, as they were able to evaluate tax returns, testimony, and bank statements regarding the business's profits. JNOV would have been improper under these circumstances.

Defendants also argue that the trial court erred in denying their motion for remittitur. In considering a remittitur motion, the court must ask "whether the jury's award is supported by the evidence." *Szymanski v Brown*, 221 Mich App 423, 431; 562 NW2d 212 (1997). As provided in MCR 2.611(E)(1), "If the court finds that the only error in the trial is the . . . excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the . . . highest . . . amount the evidence will support." Remittitur is appropriate where "the jury verdict is excessive, i.e., if the amount awarded is greater than the highest amount the evidence will support." *Heaton v Benton Const Co*, 286 Mich App 528, 539; 780 NW2d 618 (2009) (quotation marks and citations omitted). If remittitur is granted because of an excessive verdict, "[t]he amount awarded on remittitur . . . must be the highest possible amount the evidence will support." *Clemens*, 219 Mich App at 247.

Defendants argue that the highest award that the evidence supported was $8,226, contrasted with the jury's award of $119,500. Defendants argue that the only competent evidence was the 2012 tax returns of Mars and Nasah, which report a combined 2012 net profit of $76,953. Defendants argue that Ali would be entitled to half of this amount, less the salaries of he and his brother, for a total of $8,226. Again, the 2012 tax returns reflect a net profit for all of 2012, whereas the settlement agreement provides for the division of net profits through May 30. Additionally, the agreement indicated that the salaries of "the partners" would be deducted, not that of nonpartner Syed Azfar Ali. Thus, it was necessary to evaluate the testimony of Ahmed and the bank statements to determine the profits as of May 30, 2012.

With a verdict of $119,500, the jury calculated the net profits as of May 30 to be at least $239,000, i.e., double the jury verdict. It is possible that the jury actually calculated a higher amount of net profits but deducted the aforementioned salaries. The evidence could have supported at least a $400,000 profit based on testimony and bank statements showing that Ahmed removed $400,000 from the Nasah account in April 2012. The net profit amount calculated by the jury was much lower than the range proposed by Ali, and indicates that the jury

subtracted expenses from the $400,000 amount. Although it is speculation to state how the jury may have arrived at its award, the evidence supported an award in excess of the $8,226 suggested by defendants, or the $76,953 net profit figure from the tax returns.

"[A] verdict should not be set aside merely because the method the jury used to compute damages cannot be determined." *Heaton*, 286 Mich App at 539. "[T]he adequacy of the amount of the damages is generally a matter for the jury to decide." *Id*. Moreover, we "must defer to [the] trial court's decision" to deny remittitur "because of the trial court's superior ability to view the evidence and evaluate the credibility of the witnesses." *Bordeaux v Celotex Corp*, 203 Mich App 158, 171; 511 NW2d 899 (1993). Here, there was testimony, as well as bank statements and tax returns, supporting the amount awarded by the jury. Thus, the trial court did not err in denying defendants' motion for remittitur.

We affirm.

/s/ Thomas C. Cameron
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher

-6-